[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 365 
The plaintiff is a married woman about forty years of age, accustomed to traveling and residing in the city of Kingston. On the morning of May 23rd, 1908, she went to the city of New York on her way to Natick, Massachusetts, where she had a daughter at school, intending to attend a reception there in the evening. She packed the necessary wardrobe in a suit case and placed at the bottom beneath the clothing a card case containing four finger rings and $25 in currency. The money was in three bills, two for $10 each and one for $5, and she wrapped them around the rings before placing them in the card case. The suit case was not locked during her journey to Natick, as the lock was out of order, but there was a catch on either side of the lock. There were no straps or other fastenings. She preferred to carry her suit case, although as packed it was very heavy, rather than check it and subject it to the danger of scratching and other injuries.
On reaching New York she stored the suit case in the *Page 368 
baggageroom of the Grand Central Depot and went out to make some purchases. When she returned in an hour or two she took the suit case from the baggageroom, went directly to the ladies' room, placed the suit case on a seat and opened it far enough to get hold of the card case, take out the five-dollar bill and replace the package where it was before. She also put the purchases she had made in the suit case. She did not take the card case out of the suit case, but held the latter open in such a way as to enable her to take hold of the card case and remove the bill, which she needed to pay her fare on the railroad. While there were ladies in the room, no one was near her when she opened the suit case and took out the money. After replacing the card case with the jewelry and the rest of the money therein beneath the clothing as she had before, she went at once to the ticket office, purchased a ticket to Natick, keeping the suit case by her as she did so and until the train was announced, when she carried it on board and kept it by her side until near Worcester, Massachusetts. At this time the conductor came through her car and she asked him to send some one to take her suit case off at Worcester, where she was to take another train for Natick. About ten minutes later a trainman wearing the usual badge of his position on his cap, came to her and asked if she was the lady who had requested the conductor to have some one help her off with her baggage at Worcester. He also asked if she was through with her suit case and in answer to her inquiry, "Is this Worcester?" he said, "Yes, if you are through with your suit case I will take it." The plaintiff, believing that the train was about to stop at Worcester, let the trainman take her bag, which he carried to the rear of the car, as she was facing toward the front. Soon after she saw him pass through to the front of the car, lock the door of the toilet room and walk back again to the rear. During this time the train was in motion and ten or fifteen minutes elapsed between the *Page 369 
delivery of the suit case and the arrival of the train at Worcester. When the train stopped the trainman stood at the foot of the step at the rear of the car, which was not a Pullman, but an ordinary coach. He did not help her off, but handing her the suit case, said: "Here's your grip." She gave him a little change as a gratuity, and asked: "Where does the Natick train come in?" He pointed to another track near by, dropped the suit case and hurried up the steps into his car without saying anything further.
Not long after boarding the train for Natick the plaintiff opened her suit case, found the clothing somewhat disturbed and the card case soiled about the edges where it had been fresh and clean before. On opening the card case she found only the least valuable of the four rings, the other three and the money being gone. Nothing else was missing, although there were three valuable pearl combs in the suit case. She complained to the conductor, but he could do nothing. She testified positively that her suit case was not out of her sight nor opened from the time she took the five-dollar bill out of it at the Grand Central Depot until she intrusted it to the trainman, and that she knew that all the jewelry was in it at that time. She was a lady of prominence, the rings were adapted to her social position, and she was in the habit of wearing them at parties and receptions. While she had some money in a handbag carried on her arm, she took the bills in the card case for use as "extra money," if occasion required.
Her ticket stated that it was issued by the New York, New Haven Hartford Railroad Company and that it entitled the bearer to first class passage from New York to Natick, Massachusetts. It also stated that "in selling this ticket for passage over other roads, this company acts only as agent and assumes no responsibility beyond its own line. This company assumes no risk on baggage except for wearing apparel and limits its responsibility to *Page 370 
one hundred dollars in value, all baggage exceeding that value will be at the risk of the owner unless taken by special contract." Attached to the ticket were two coupons, one from "New York to Springfield," and the other from "Springfield to Natick."
Certain rules of the defendant were read in evidence, and those governing conductors provided that "passenger conductors will be responsible for the movement, safety and care of the train and for the vigilance and conduct of the men employed thereon, and must report any misconduct or neglect of duty. The reputation of a railroad depends greatly upon the attention and courtesy shown to its patrons. * * * See that trainmen assist passengers on and off trains." The rules governing trainmen provided, among other things, as follows: "Passenger trainmen report to and receive their instructions from the trainmaster, and while on trains are subject to the orders of the conductor. * * * Take position at the car steps to assist passengers on and off the train and to inform passengers getting on the train as to its destination and where it is scheduled to stop. * * * The proper place for the rear trainman while the train is in motion is on the rear car. Other trainmen will pass through the train at intervals to look after the comfort of the passengers and for the safety of the train."
A man who had acted as trainman for eleven years on the Boston Albany railroad and was so employed in May, 1908, on a train between Springfield and Worcester, testified: "While on the train I am subject to the orders of the conductor while on duty. I had to see that the cars were properly ventilated and pass through the cars at certain different times to see that the people were comfortable in different ways * * * to open windows and close windows, whatever they may ask of me and take care of the ventilators, etc." He also testified that he took other care of the passengers, assisting them on and off the train; that if passengers were overloaded *Page 371 
with baggage it was his duty to assist them in getting on and also to help them in getting off, with their baggage, and he habitually did so; that during the year 1908, while acting as trainman on the Boston Albany railroad, he frequently assisted passengers on and off trains with their baggage, and that it was the custom of trainmen on that road at that time to assist passengers on and off the cars with their baggage; that some cars on that road had baggage racks for hand baggage while others had not.
It was admitted that the value of the lost rings was the sum of $1,500. The plaintiff testified that she did not read her ticket, or notice that "there was any printing inside of that black space. The letters were very small letters. I can read it now by examining more closely."
At the close of the evidence the defendant moved for a nonsuit upon the ground that the defendant did not undertake to care for the valuables in the suit case; that it was not paid any consideration therefor, and that the fact that they were carried in a suit case negatives the idea that they were carried for the comfort, appearance and adornment of the plaintiff. There was no motion to dismiss on the ground that the evidence did not warrant the inference that the defendant was guilty of negligence, or that the trainman was not acting within the line of his duty when he took charge of the plaintiff's property, or that she was guilty of contributory negligence.
The court found the facts in accordance with the testimony of the plaintiff, and among other things found specifically "that prior to and on May 23rd, 1908, it was the custom of the defendant, its servants and trainmen to assist passengers with baggage on and off its trains and cars; that the defendant's trainman in assisting plaintiff with her baggage upon and off defendant's train and car near and at Worcester, in the state of Massachusetts, *Page 372 
was discharging a duty of the defendant to the plaintiff, and was not plaintiff's servant. The payment of a fee to the trainman was not intended by the plaintiff to be a payment to or for the defendant." It was further found that the property in question was "delivered to the defendant, its servant and trainman," and that "notwithstanding the duty of the defendant to deliver said suit case and its contents to the plaintiff when she alighted from the defendant's train," it failed to deliver to her "said three rings and her two ten-dollar bills." It was also found that the defendant negligently cared for the suit case and its contents; that the property was lost without any negligence on the part of the plaintiff, and that the value of the property was neither asked nor stated when it was delivered to the trainman.
The conclusion of the trial court that the trainman was acting within the line of his duty when he took the suit case of the plaintiff in order to help her off the train was warranted by the evidence. The rules and the custom of the defendant sustain the finding. The duty to help "passengers on and off trains" carries with it as an incident, under reasonable circumstances, the duty to assist a lady traveling with heavy hand baggage and it was the established custom of the defendant's trainmen to do so. Moreover, the trainman was subject to the orders of the conductor and acted under his direction. Granting that he might refuse to carry off hand baggage if there were many applications, or he was otherwise engaged, in fact he did not refuse but took possession of the plaintiff's suit case. In furnishing the assistance which he assumed to afford to the passenger he was obliged only to discharge that duty so as not to conflict with a similar obligation to other passengers, and if for that reason he could not have given the suit case undivided attention and it had been rifled without any negligence on his part the defendant would not have been liable, but in this case there is no explanation afforded whatever of how the loss occurred. *Page 373 
There is nothing to show what care the trainman bestowed upon the suit case, and in the absence of any proof on the subject the trial court or the jury would be allowed to infer that it had been occasioned by negligence.
While it was not shown that it was the custom of trainmen to keep baggage in their custody for so long a period as the trainman in question kept that of the plaintiff, still she was not responsible for the length of time that elapsed. When she let him have her baggage, pursuant to the previous arrangement with the conductor, she believed that the train had reached Worcester. She had the right to so believe, for the trainman said, "Yes" in response to her question, "Is this Worcester?" Acting on that belief it was not her duty, as matter of law, after a few minutes had passed and the train did not stop, to seek out the trainman, take back her baggage and keep it until the train actually reached the place where he said it already was. The delay in stopping was not long enough to require such a precaution, for the law is satisfied if her action was reasonable under all the circumstances and that was a question of fact.
As the trainman was acting within the scope of his employment when he took the suit case, in legal effect it was the same as if the defendant, personified, had taken it. (Bunnell v. Stern,122 N.Y. 539, 543.) Therefore, the plaintiff's property was lawfully in the possession of the defendant and the question arises what was its duty in reference thereto. Its possession was not that of a carrier, because the suit case had not been checked as baggage nor intrusted to it for the journey, but only for the special purpose of aiding a lady passenger in getting off the train in accordance with a custom established by itself and, hence, it was not liable as an insurer. Its possession was that of a bailee, and the law of bailments measures its obligation to the plaintiff in regard to her property. Whether it was a bailee for hire in performing a service incidental to her carriage as a passenger with *Page 374 
the obligation of ordinary care, or a gratuitous bailee with the obligation of slight care, the result is the same. In either event, as we held in the case cited, some care was required, yet none was shown. The law required the defendant to return all the property intact, or to explain its loss in some satisfactory way, but it did neither. It did not deliver the rings or money on the implied demand of the plaintiff as she got off the train, and when confronted by proof of the facts in court it called no witness and gave no explanation. If the rings were stolen from its trainman, it should have proved the fact, and if the trainman, himself, stole them, it would have been no defense, because the defendant was bound to employ faithful servants. (4 Elliot on Railroads, § 1623.) The obligation to deliver or to make an explanation sufficient in law rested on the defendant under all the circumstances and it did not discharge the obligation. As was said by Judge HOUGHTON for the Appellate Division: "There being no explanation respecting the loss of the goods or endeavor to account for their non-delivery, * * * the plaintiff made a prima facie case of negligence. (Fairfax v.N.Y.C. H.R.R.R. Co., 67 N.Y. 11.)"
In the Fairfax case Judge RAPALLO said: "When the plaintiff demanded the article, it had disappeared, and no account is given of the cause of disappearance. This is prima facie evidence of negligence. (Steers v. Liv., N.Y. P. Sts. Co., 57 N.Y. 1.)" (p. 14.) In Claflin v. Meyer (75 N.Y. 260, 262) the court said: "The cases agree that where a bailee of goods, although liable to their owner for their loss only in case of negligence, fails, nevertheless, upon their being demanded, to deliver them or account for such non-delivery, or, to use the language of SUTHERLAND, J., in Schmidt v. Blood, where `there is a total default in delivering or accounting for the goods,' (9 Wend. 268) this is to be treated as prima facie evidence of negligence. (Fairfax v. N.Y.C. H.R.R. *Page 375 R. Co., 67 N.Y. 11; Steers v. Liverpool, N.Y. P. SteamshipCo., 57 id. 1; Burnell v. N.Y.C.R.R. Co., 45 id. 184.) This rule proceeds either from the assumed necessity of the case, it being presumed that the bailee has exclusive knowledge of the facts and that he is able to give the reason for his non-delivery, if any exist, other than his own act or fault, or from a presumption that he actually retains the goods and by his refusal converts them."
In a recent case where the luggage of the plaintiff was delivered to the baggagemaster of a steamship to be carried on board, Chief Judge CULLEN said: "The loss of the suit cases unexplained established a prima facie case of negligence and no explanation was given. The service thus rendered was not a voluntary one on the part of the employee outside of the scope of his duty, for it is the common custom of the stewards and other employees of an ocean steamer to carry the cabin baggage of the passengers on and off the boat." (Holmes v. North German LloydS.S. Co., 184 N.Y. 280, 285.)
Although the question was not raised during the trial, it is suggested that the plaintiff was guilty of contributory negligence in delivering her suit case when it was neither locked nor fastened except by the catches. Contributory negligence, however, in its ordinary sense, has no application to a bailment made under the circumstances of this case, because the plaintiff proved delivery to the defendant and failure on its part to re-deliver to her on demand. That made out a prima facie case, as we have held, and called on the defendant to explain why it did not restore the property. So far as appears it may still have the articles in its possession and it cannot justify detention because when received they were not securely locked in the suit case. It is its duty to restore them if it still has them, regardless of the condition they were in when received. If it had proved by way of explanation that the articles were stolen from the trainman while he *Page 376 
was attending to other duties and had shown that they could not have been thus stolen if the suit case had been locked, a very different question would have been presented. It is only as part of the explanation required from the defendant that contributory negligence becomes material. That subject formed no part of the plaintiff's case, although it might have formed a vital part of the defendant's case if it had seen fit to make an explanation. It is said that the trainman was in court at the trial, but whether he was or not, the defendant neither called him nor gave any excuse for not calling him, such as death or absence beyond the reach of a subpœna. The presumption from the evidence is that the defendant still has the articles in its possession or that it has converted them to its own use, and while the presumption could have been rebutted by a proper explanation none was given or attempted.
The law does not require a bailor in an action against a bailee to answer a possible explanation of the latter in advance of its being made, and which in fact might never be made. Such an action rests on the presumption arising from delivery, demand and refusal, without affirmative proof of negligence in any respect. On the other hand, in an action for negligence resulting in personal injury, there must be affirmative evidence that the injury was caused solely by the negligence of the defendant, which includes proof that the plaintiff did not contribute to the accident by his own act or default. The distinction between the two classes of actions is very clear, and the reason for shifting the burden of proof as to contributory negligence so obvious as to require no further discussion.
The defendant insists that even if the plaintiff is entitled to recover she should be limited to the sum of $100, as provided in the ticket purchased by her. That restriction, however, applies only to baggage that is regularly checked and not to hand baggage retained in the possession of the passenger, except temporarily in getting on and off of *Page 377 
trains. This question is settled by a case already cited, in which the chief judge said: "We are of opinion that the provisions of the passage ticket did not apply to baggage intended to be taken by the passenger to her stateroom for use during the voyage, but only to such as might be delivered to the defendant to remain in its possession until the termination of the voyage." After reviewing the authorities he continued: "We think that the agreement contained in the passage ticket was not intended to relieve the defendant from liability for baggage of this character." (Holmes v. North German Lloyd S.S. Co.,184 N.Y. 280, 283, 284.) While the circumstances of that case were somewhat different, the principle announced applies to both cases and must control our decision.
The claim of exemption from all damages in excess of $150 made under the Public Service Commissions Law, cannot be sustained, because, if for no other reason, that statute applies only to losses sustained in this state. (L. 1907, ch. 429, § 38.) The ticket of the plaintiff called for transportation in part in the state of Massachusetts, the suit case was delivered to the defendant's trainman in that state, the implied demand for re-delivery was made there and the loss occurred there. Hence, the laws of Massachusetts, which in the absence of proof are presumed to be the common law of the land, must control the amount of damages. (Curtis v. D., L. W.R.R. Co., 74 N.Y. 116. )
The plaintiff took the articles in question with her for personal use at a reception to be held at the end of her journey and a small amount of money for use in case of emergency. The jewelry was adapted to her tastes, habits and standing, as the court found upon sufficient evidence, and the amount of money was no greater than was found to be reasonable and prudent. Under the facts as thus settled we think that the suit case and contents were baggage such as is frequently called luggage and that in the absence of any limitation by statute, *Page 378 
regulation of the road, or inquiry as to value, the defendant was liable for the reasonable value of what was lost. The contract to transport the plaintiff carried with it the duty of transporting a reasonable amount of hand baggage, such as is commonly taken by travelers for their personal use, the quantity and value depending upon station in life, object of the journey and other considerations. (Merrill v. Grinnell, 30 N.Y. 594; Carlson
v. Oceanic Steam Navigation Co., 109 N.Y. 359; Railroad Co. v. Fraloff, 100 U.S. 24, 29; Ray on Negligence of Imposed Duties, 561, 564; 4 Elliot on Railroads, 2604, 2605.)
As was said by Chief Justice COCKBURN in Macrow v. GreatWestern Railway Co. (Law Rep. [6 Q.B.] 612, 621.) "Whatever the passenger takes with him for his personal use or convenience according to the habits or wants of the particular class to which he belongs, either with reference to the immediate necessities, or to the ultimate purpose, of the journey, must be considered as personal luggage."
No other question requires discussion, and in affirming the judgment appealed from we intend to decide simply the case before us, where there was no conflict in the evidence. We appreciate the danger that fraud may be practiced upon railroad companies by unscrupulous passengers, and the necessity for clear proof and conservative action by the courts. This action stands by itself, however, because the credibility of the plaintiff was conceded and no witness was called by the defendant. According to the facts found on undisputed evidence, we think the defendant has properly been held liable for the loss of the property in question.
The judgment should be affirmed, with costs.
CULLEN, Ch. J., GRAY, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur; COLLIN, J., not voting.
Judgment affirmed. *Page 379