CARL PORGES and Others, Doing Business as PORGES & LEVY, Appellants, *v.* REPUBLIC STORAGE COMPANY, INC., Respondent.

First Department, June 4, 1926.

Warehousemen — action to recover value of whisky stored in defendant's bonded warehouse — defense that whisky was stolen without negligence of defendant — burden on defendant to show loss was without its fault — question of defendant's negligence should have been submitted to jury.

In an action to recover the value of whisky stored in defendant's bonded warehouse, in which it appears that the whisky was stolen from that part of the warehouse protected by United States Customs locks, the burden was upon the

defendant, after plaintiffs showed that they delivered the goods and that the goods were not returned, to go forward and establish that the failure of defendant to return the goods was due to no fault on its part.

While the evidence establishes that the whisky was stolen by burglars, there is evidence tending to show that the burglary may have been the result of negligence on the part of the defendant in that its watchman or other employees were possibly connected in some way with the burglary, and, therefore, under the circumstances, the court should have left to the jury the question whether or not the burglary was the result of negligence on the part of the defendant.

APPEAL by the plaintiffs, Carl Porges and others, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 25th day of May, 1925, upon the verdict of a jury rendered by direction of the court.

*S. Michael Ress* of counsel [*Rosenthal & Heermance*, attorneys], for the appellants.

*Outerbridge Horsey* of counsel [*Jackson, Fuller, Nash & Brophy*, attorneys], for the respondent.

MARTIN, J. The defendant conducts a bonded warehouse at No. 541 West Thirty-fourth street, in the city of New York. The plaintiffs, copartners, seek to recover $8,641.86 for 268 cases of whisky stored with the defendant for plaintiffs' account and, it is alleged, lost through defendant's negligence.

The answer admits that defendant received on June 24, 1922, the 268 cases said to contain whisky and that they had been sent to its warehouse by the United States Customs authorities. It alleges that they were securely stored until September 6, 1922; and that then, without any fault or negligence on the part of the defendant, certain persons unknown to it broke into and entered the warehouse and stole and carried away the said cases and contents.

It is contended that there was no proof of negligence on the part of the defendant and none as to the contents of the 268 cases or the value thereof.

The plaintiffs point out that the sole reason for directing a verdict was a ruling that they had failed to prove negligence on the part of the defendant. They also contend that there was evidence requiring the case to be submitted to the jury.

It is asserted by the defendant that the whisky was stolen by four burglars, three of whom were disguised as policemen. They were admitted to the warehouse by defendant's employees through a street door furnished with a burglar alarm and were thus allowed to enter defendant's office, which was wholly outside of the warehouse proper. In order to reach the appellants' goods it was necessary, after gaining access to this office of the warehouse, to

break through two locked doors, protected by the United States Customs locks, thereby obtaining an entry to the basement floor, and then to break into the ground floor of the warehouse proper.

The structure is a large brick, steel and concrete building facing seventy-five feet on Thirty-fourth street, and fifty feet on Thirty-fifth street. The basement, third, fourth, fifth and sixth floors were protected by steel covered doors, and used as a United States Customs bonded warehouse under the custody and control of a United States Customs storekeeper, who retained the keys.

At the time of the burglary two watchmen, Joseph De Salvo and Edward Kruger, were in charge of the premises. In the early morning of September seventh, between five and six o'clock, De Salvo called Mr. Frank A. Sipp, the vice-president of the respondent, by telephone, to come from his home to the warehouse. On arriving at the warehouse he found on the premises an inspector from police headquarters and several other members of the detective bureau, as well as the watchmen who appeared to be very much agitated and excited. De Salvo showed him marks on his hands and wrists where he had been bound. The ground floor was more or less disturbed, cases and barrels being thrown and scattered about the floor. The government lock at the entrance to the elevator had been broken off and was lying on the floor alongside of the door. A similar lock from the door leading to the Customs bonded warehouse in the basement had been broken off. The Thirty-fifth street door had been forced and broken open and there were marks indicating that a motor truck had been backed into the building. On checking up the merchandise it was ascertained that the 268 cases alleged to have contained Scotch whisky were missing.

The precise manner in which the thieves gained an entrance to the office of the warehouse was recounted in detail by the two night watchmen.

The sole question on this appeal is whether there was sufficient evidence to require a submission of the case to the jury.

The defendant contends that it showed by uncontradicted evidence that the goods had been stolen, and thus avoided all liability for the loss by theft.

It overlooks the fact that the question whether the burglary was the result of its negligence was for the jury.

The appellants contend that the story of the robbery is unreliable and of itself sufficient to raise a question for the jury.

It appears also that each of the two watchmen had a prison record, one having served a jail sentence of four years. This with the fact that caution was dictated by prior attempts at burglary

and the fact that the thieves were not let in at the regular entrance is said to suggest connivance on the part of and to impeach the credibility of these two witnesses.

It is also pointed out that De Salvo contradicted himself; that some of his statements are questionable and some inconsistent with other testimony in the record.

The plaintiffs also assert that the jury might find that somebody on the inside had disconnected the burglar alarms and arranged things so that the robbery could be carried through successfully.

The loss may or may not have been the result of defendant's negligence, but under the circumstances that was for the jury to decide. If it believed an employee was involved in the burglary, it would have been for the jury to decide whether due care had been used in selecting and employing such employee.

After the plaintiffs showed that they delivered these goods and they were not returned, the duty was upon the defendant to go forward and establish that the inability to return the goods was due to no fault on its part.

In *Hasbrouck* v. *N. Y. C. & H. R. R. R. Co.* (202 N. Y. 363) the court said: " The law required the defendant to return all the property intact, or to explain its loss in some satisfactory way, but it did neither. It did not deliver the rings or money on the implied demand of the plaintiff as she got off the train, and when confronted by proof of the facts in court it called no witness and gave no explanation. If the rings were stolen from its trainman, it should have proved the fact, and if the trainman, himself, stole them, it would have been no defense, because the defendant was bound to employ faithful servants. * * * The obligation to deliver or to make an explanation sufficient in law rested on the defendant under all the circumstances and it did not discharge the obligation."

We are of the opinion, therefore, that the testimony here presented required a submission of the issues to the jury.

The judgment should be reversed and a new trial ordered, with costs to appellants to abide the event.

CLARKE, P. J., MERRELL, FINCH and WAGNER, JJ., concur.

Judgment reversed and new trial ordered, with costs to the appellants to abide the event.