## (February 17, 1983)

■ CHARLOTTE C. VOORHIS, Appellant, v CONSOLIDATED RAIL CORPORATION, Respondent. — Judgment, Supreme Court, New York County (Kuhnen, J.), entered on March 8, 1982, after a jury verdict in favor of defendant, affirmed, without costs. Asch and Alexander, JJ., concur in separate memoranda in both of which Kupferman, J., concurs and Murphy, P. J., and Sullivan, J., dissent in a memorandum by Sullivan, J.

Asch, J. (concurring). On this appeal, the only challenge to the verdict in favor of the defendant is that the court erroneously instructed the jury with respect to *respondeat superior,* notice, burden of proof and contributory negligence. Essentially, there is no dispute about the facts. However, it may be helpful to emphasize certain aspects of what transpired. Raphael Pereira, an employee of Conrail, was the attendant at the appropriate train entrance. Mason, the plaintiff's niece, allegedly asked Pereira to watch the suitcase and he allegedly said yes. Mason left the suitcase right next to Pereira. Pereira did not take it from her hand or move it in any way. Pereira, when confronted with a statement made by him, admitted that he agreed to watch the suitcase. When Mason returned, the suitcase was gone. Plaintiff, Voorhis, then sued the Consolidated Rail Corporation (Conrail) for the value of the lost property on a theory of breach of bailment. There was testimony at trial regarding the duties of an "usher", which was Pereira's job title. It was stressed that an usher was *not* involved with baggage, and the job description in evidence did not include caring for baggage. Mason conceded that she knew that "red caps" generally

are for luggage. On the other hand, the testimony indicated that Pereira had "watched" luggage in the past. The court in its instructions described a bailment contract as requiring delivery of possession from one person to another to be returned on demand. It requires acceptance by the bailee. The court stated that plaintiff has the burden of proving this contract. The court then instructed the jury as to the law of negligence, assuming that a bailment had been created. The court charged that Conrail would be liable for the acts of its employee, Pereira, if the jury found that Conrail "should have anticipated that an employee such as Mr. Pereira would possibly enter into such an arrangement * * * and if you further find that the act was in the interests of the employer, Conrail". It is urged by the plaintiff and accepted by the dissent that these instructions erroneously restricted the jury. They suggest that the jury should have been instructed that if the act of Pereira was performed while doing Conrail's work, even if the employee disregarded the instructions of his employer, then the employer would be liable, mainly relying on *Riviello v Waldron* (47 NY2d 297, 302). In my opinion, this represents too narrow a view of the doctrine for which *Riviello* stands. True, the dissent quotes accurately from that opinion where it recites (p 302) that the test of *respondeat superior* " ' "[is] whether the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions" ' ". But in the very next paragraph (pp 302-303), the *Riviello* court was careful to qualify this statement, by continuing: "Thus formulated, the rule may appear deceptively simple but, because it depends largely on the facts and circumstances peculiar to each case, it is more simply said than applied (see *Riley v Standard Oil Co.*, 231 NY 301, 304). For, while clearly intended to cover an act undertaken at the explicit direction of the employer, hardly a debatable proposition, it also encompasses the far more elastic idea of liability for 'any act which can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of that act' (2 Mechem, Agency [2d ed], § 1879, p 1461). And, because the determination of whether a particular act was within the scope of the servant's employment is so heavily dependent on factual considerations, the question is ordinarily one for the jury (*Rounds v Delaware Lackawanna & Western R. R. Co.*, 64 NY 129, 137-138; see *McLoughlin v New York Edison Co.*, 252 NY 202, 208; Note, 45 U of Cin L Rev 235, 236). That is not to say there are no useful guidelines for assessing whether the conduct of a particular employee, overall, falls within the permissible ambit of the employment. Among the factors to be weighed are: the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by such an employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated (see Prosser, Torts [4th ed], § 70, p 461; Restatement, Agency 2d, § 229)." Our brethren in the Second Department have placed *Riviello* in a perspective which seems closer to the intent of that case. "Despite its affirmance in the Court of Appeals, *Makoske's* [*Makoske v Lombardy*, 47 AD2d 284, affd 39 NY2d 773] reception by the judicial system was less than overwhelming (see, e.g., *Goldfarb v Hudson*, 75 AD2d 775; *Nero v Ris Paper Co.*, 60 AD2d 340; *Tortora v La Voy*, 54 AD2d 1036), and only *Riviello v Waldron* (47 NY2d 297) has carried the day for foreseeability. The actor in *Riviello* was a short-order cook who, while mingling with patrons at his employer's bar as he was wont to do, began 'flipping' a knife and accidentally struck the plaintiff in the eye. In concluding that the scope of authority issue was for the jury, the Court of Appeals observed (p 304) that: 'for an employee to be regarded as acting within the scope of his employment, the

employer need not have foreseen the precise act or the exact manner of the injury as long as the general type of conduct may have been reasonably expected'." (*O'Boyle v Avis Rent-A-Car System,* 78 AD2d 431, 442.) The more widely accepted version of the rule imputing responsibility for the acts of an employee to his employer is that the servant " *'was engaged at the time in doing his master's business, and was acting within the general scope of his employment' "* (*Sauter v New York Tribune,* 305 NY 442, 445). The instructions given by the Trial Judge herein conformed, perhaps not in *haec verba,* substantially to the *Riviello* standard. It is next urged by plaintiff that the jury was improperly instructed regarding the contents of the suitcase. The court charged that the jury may find that Pereira reasonably could not have known that the suitcase contained valuable jewelry and the jury could consider whether plaintiff made such a disclosure. The plaintiff urges that the railroad should be on notice that a woman's suitcase may contain valuable jewelry (relying primarily on *Hasbrouck v New York Cent. & Hudson Riv. R. R. Co.,* 202 NY 363). There may well be a question as to whether a bailee accepting a closed suitcase can be held responsible for articles which may not reasonably be expected to be contained in it, in the absence of explicit notice (*Crosby v 20 Fifth Ave. Hotel Co.,* 173 Misc 595, mod and affd 173 Misc 604; *Waters v Beau Site Co.,* 114 Misc 65). Conrail notes that *Hasbrouck* was decided in 1911 when the expectation was that people would travel with valuables but that, today, on short train trips, it is not expected that people would carry such valuables. Even if the Judge's charge was erroneous, however, it would not warrant reversal, since the jury, in finding no liability on the part of defendant, did not reach the issue of damages, even if the suitcase did contain jewelry. It is then urged that the court improperly placed the burden on plaintiff of proving gross negligence. However, that burden was correct. Even *Hasbrouck* (*supra,* p 374), cited by plaintiff, concedes that a railroad employee can be a gratuitous bailee with a burden of slight care and liable, therefore, only on a showing of gross negligence. The prevailing law is that a bailment is classified as being one for the sole benefit of the bailor; or one for the sole benefit of the bailee; or one for the mutual benefit of both parties (see 9 NY Jur 2d, Bailments and Chattel Leases, § 6, and the cases there cited). The standard of care to which the bailee is required to conform will vary with the above characterization of the bailment (see 9 NY Jur 2d, Bailments and Chattel Leases, §§ 89-90). Dependent upon and varying with the category to which the bailment is assigned, the bailee will be liable either for gross negligence, slight negligence, or ordinary negligence. If a bailment existed in this case, it was accepted by both plaintiff and defendant as being one for the sole benefit of the bailor and hence, for the plaintiff to recover, she had to establish that the bailor was grossly negligent. Perhaps the time has come to abandon the "three bears" classification for bailments, which rigidly imposes a specified degree of due care on the bailee, depending upon the category of the bailment which is assigned to the relationship. Since the invention of *trespass on the case* some time during the fourteenth century, to comprehend claims for miscellaneous unclassified torts, the direction of the law of torts has been toward a more flexible and realistic appraisal of what actually took place between the parties. This development has accelerated in the last quarter of a century (at least where the law has continued to impose liability based on fault). Certainly, the acceptance of comparative negligence has been a giant step in this direction. It seems particularly relevant to note that the tripartite classification of those entering on land, and imposing varying degrees of responsibility on the landowner, has been rejected by the Court of Appeals (*Basso v Miller,* 40 NY2d 233). This approach has enabled the trier of the facts, be it jury or Judge, to reach a result

which makes for greater fairness. However desirable a similar change in the law of bailments might be, it is not the law today. The plaintiff, the defendant and this court are still bound by the threefold classification of bailments and the threefold degrees of responsibility. Even if a bailment were created in this case, it was purely a gratuitous one, made for the benefit of the bailor. Accordingly, the Trial Judge was quite correct when he instructed that in order for plaintiff to recover, she was obligated to prove gross negligence. Finally, it is argued that contributory negligence should not have been submitted to the jury as an issue in a bailment case. However, this contention is not supported by law. (See 9 NY Jur 2d, Bailments and Chattel Leases, § 126, and the cases there cited.) If a bailment is created, negligence on the part of the bailor can serve to exonerate (at least partially, CPLR 1411-1413) a bailee (*Osborn v Cline,* 263 NY 434, 438; *Wamser v Browning, King & Co.,* 187 NY 87; *J. W. Mays, Inc. v Hertz Corp.,* 15 AD2d 105, 110). All in all, the Trial Judge instructed the jury in accordance with the law, and the jury reached a result in accordance with the law and a very reasonable view of the facts.

Alexander, J. (concurring). The essential facts are not seriously in dispute and they are fairly stated in the dissent. Notwithstanding that the court below may have misstated the law regarding *respondeat superior,* it seems to us on a review of this record that the fundamental issues dispositive of this lawsuit were whether or not there was a bailment of the $34,000 of jewelry allegedly contained in the suitcase that was lost at Grand Central Terminal, and whether or not there was proof of gross negligence by the Conrail employees. Accepting, as does the dissent, that the suitcase was in fact the subject of a bailment agreement between the plaintiff's niece and the defendant's employee, no liability would attach for loss of the extraordinary amount of jewelry contained therein, absent notice thereof to the defendant's employee. (See *Magnin v Dinsmore,* 62 NY 35; *Nathan v Woolverton,* 69 Misc 425, affd on opn below 147 App Div 908.) Moreover, such bailment as may have existed was clearly a gratuitous bailment, in respect to which no liability for failure to return the subject of the bailment would attach in the absence of proof of gross negligence. The court below charged the jury appropriately as to the elements of a contract of bailment including the requirement that there must be a delivery of the subject of the bailment and an acceptance of that property by the bailee and that in a gratuitous bailment there must be gross negligence. The court stressed that acceptance is essential to a contract of bailment and went on to charge the jury that "[i]f the nature of the property is in a closed container, like this suitcase, and it is not disclosed, then you may find that the property was not knowingly accepted by Mr. Pereira * * * In other words, the bailee cannot be compelled to assume liability greater than is intended under all the circumstances." Significantly, the evidence demonstrates that the plaintiff's niece herself did not know that this jewelry was contained inside the suitcase she left with Mr. Pereira. The court charged the jury that there could be a contract of bailment as to the suitcase but not as to the jewelry and instructed them that they should determine whether under the circumstances Mr. Pereira should or should not have expected the suitcase to contain jewelry of the value alleged by the plaintiff. The jury was instructed that if they found that there was a bailment Pereira was responsible for such contents which the jury reasonably would expect to find in a suitcase under the circumstances of this particular case and that although the law presumed his negligence because no explanation for the missing bag was given, there had to be proof of gross negligence in order for plaintiff to recover. After deliberating for approximately 20 minutes, the jury requested that it be recharged on the law regarding a contract of bailment. In response to this request, the court

repeated the charge it had previously given them and the jury returned to its deliberations. A verdict for the defendant was returned within the half hour. It seems therefore that the jury's determination in favor of the defendant is fully supported by the evidence and that such error as there may have been in the charge was harmless.

Sullivan, J. (dissenting). In this breach of bailment action to recover the value of the contents of a suitcase which had been lost at Grand Central Station, plaintiff appeals from a verdict in favor of the defendant, Conrail. The essential facts are not in dispute. While plaintiff, 80 years of age and lame, was purchasing a ticket her niece took the suitcase, which plaintiff alleges contained, among other things, valuable jewelry, to the entrance of track 28, where she met Raphael Pereira, a uniformed Conrail usher. According to plaintiff's evidence the niece asked Pereira if he would watch the suitcase while she assisted her aunt. Pereira agreed. The niece testified that she placed the suitcase at Pereira's feet and then left to find her aunt and to assist in the purchase of the ticket. When she returned within two or three minutes the suitcase was gone and could not be located. Although he was still in Conrail's employ at the time of trial Pereira was not called as a witness. Instead, plaintiff read in evidence his pretrial deposition in which he admitted, after being confronted with a Conrail report containing his statement, that, indeed, he had agreed to watch the suitcase but that he had been called away and when he returned the suitcase was missing. No other explanation has ever been given for the suitcase's disappearance. At another point in his deposition Pereira testified that he never agreed to watch the suitcase but merely gave permission to leave it at a location about three feet away from him. On this state of facts the court submitted to the jury the issue of whether a bailment had been created and, if so, whether Conrail had been negligent. Once a carrier accepts control and possession of a passenger's baggage a bailment is created. (*Mays v New York, New Haven & Hartford R. R. Co.*, 197 Misc 106; *Van Dike v Pullman Co.*, 145 Misc 452, 457.) Whether it be charged with the duty of ordinary care as a bailee for hire in performing a service incidental to a passenger's carriage or only with the obligation of slight care as a gratuitous bailee, at least some degree of care is required. (*Hasbrouck v New York Cent. & Hudson Riv. R. R. Co.*, 202 NY 363, 373-374.) Thus, the jury had to determine whether Pereira had, in fact, agreed to watch the suitcase because on this record delivery and acceptance of possession would have flowed inexorably from such agreement. Conrail's answer contained a number of affirmative defenses, including that Pereira's acts were outside the scope of his employment and therefore not binding on it. In this connection Conrail offered testimony that the job description of usher did not include baggage handling and, further, that its ushers were instructed not to get involved with baggage. The job description, however, did include the duty to assist passengers and to be helpful. Moreover, in his deposition, Pereira testified that notwithstanding Conrail's instructions he had watched luggage for other passengers on previous occasions. At the close of the evidence, plaintiff requested, *inter alia,* a charge that Conrail would be responsible for the negligence of its employee, Pereira, even though he was acting in an unauthorized manner, if, at the time, he was acting in furtherance of Conrail's interests. The court refused and an appropriate exception was taken. Instead, the court charged that Conrail would be liable for Pereira's acts if the jury found that Conrail "should have anticipated that an employee such as Mr. Pereira would possibly enter into such an arrangement * * * and if you further find that the act was in the interests of the employer, Conrail". In our view this was error. The test of *respondeat superior* " ' "[is] whether the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of

instructions" ' " (*Riviello v Waldron,* 47 NY2d 297, 302, citing *Jones v Weigand,* 134 App Div 644, 645). In the circumstances plaintiff was entitled to a charge that if, in agreeing to watch the suitcase, Pereira was acting in the interests of his employer, Conrail, and not for purposes of his own, Conrail would be liable for any negligence on Pereira's part, even though he may have acted in disregard of Conrail's instructions. The argument that the court's charge was substantially in conformity with the standard outlined in *Riviello* misses the point. The charge limited Conrail's liability to the singular situation where it should have anticipated that its employee would enter into an arrangement to watch the suitcase and thereby, in effect, disobey its specific instructions. *Riviello* clearly does not constrain a party's liability under *respondeat superior* to such a narrow standard. One other aspect of the case requires comment. The record reflects that the niece was unaware of, and Pereira did not ask any questions about, the contents of the suitcase. The court charged that if Pereira did not "expect the suitcase to contain jewelry of value Conrail was not liable for such contents." In so charging the court ignored a long-standing principle. It should have charged, as requested, that the jury could find that Conrail, through its usher, Pereira, was on notice that the suitcase might contain valuable personal effects of a type, such as jewelry, that a passenger might take with him on a trip. (See *Railroad Co. v Fraloff,* 100 US 24; *Hasbrouck v New York Cent. & Hudson Riv. R. R. Co.,* 202 NY 363, *supra; Sherman v Pullman Co.,* 79 Misc 52.) While it may be as Conrail contends, that with the alternative means of transportation which are now available the railroads are not carrying as many passengers long distance as they once did, it would be unreasonable to presume that every suitcase-carrying passenger on a train bound for Bridgeport is merely a commuter. Nor, as is suggested, can the court's error be avoided on the ground that the jury found for Conrail and thus the question of damages was never reached. The verdict was general. Thus, we have no way of knowing whether the jury found that Pereira accepted the suitcase while engaged in his master's business, but at the same time exonerated Conrail because it found that it was not liable in damages since Pereira did not "expect" the suitcase to contain valuable jewelry. "No one but the jurors can tell what was put into [the verdict] and the jurors will not be heard to say. The general verdict is as inscrutable and essentially mysterious as the judgment which issued from the ancient oracle of Delphi * * * The court protects the jury from all investigation and inquiry as fully as the temple authorities protected the priestess who spoke to the supplient votary at the shrine." (*Skidmore v Baltimore & O. R. Co.,* 167 F2d 54, 60.) Finally, *Magnin v Dinsmore* (62 NY 35), upon which the majority relies for the proposition that without notice to its employee Conrail could not be held liable for loss of the jewelry, is irrelevant to this case. There, the parties, a carrier and a shipper, had contracted that if the shipper did not state the value of the cargo shipped, it could not demand reimbursement of more than $50 in the event of a loss. The court found that the shipper effectively breached the contract by concealing the value of the cargo at the time it consigned the goods, and thus was not entitled to the full value of the lost goods. The instant case does not involve a similar contractual relationship, nor does Conrail rely on any limitation of liability found in any tariff of which it made plaintiff aware before it accepted the goods (if, indeed, its employee accepted the goods — a question which only the jury can resolve). *Nathan v Woolverton* (69 Misc 425, affd on opn below 147 App Div 908), also cited by the majority for the same point, is similarly inappropriate. Conrail's possession was not a bailment of carriage inasmuch as the suitcase had not been checked as baggage nor entrusted to it for the journey. Instead, according to the testimony, the suitcase was left with Conrail

for the special purpose of aiding a passenger in getting on a train. (See *Hasbrouck v New York Cent. & Hudson Riv. R.R. Co.,* 202 NY 363, 373, *supra,.*) Accordingly, the judgment should be reversed and the matter remanded for a new trial.