SOPHIE HAYKL an Infant, by LOUIS WITASZEK, Her Guardian ad Litem, Respondent, *v.* CHARLES DREES and Others, Defendants, Impleaded with GRANGER & Co., Appellant.*

LOUIS WITASZEK, Respondent, *v.* CHARLES DREES and Others, Defendants, Impleaded with GRANGER & Co., Appellant.*

Fourth Department, March 11, 1936.

* Revg. 155 Misc. 838.

*Roy P. Ohlin* [*Charles F. Steele* of counsel], for the appellants.

*Maurice Frey* [*Clayton M. Smith* of counsel], for the respondents.

TAYLOR, J.   A car owned by defendant Weissgerber and driven by defendant Drees collided with another car operated by defendant Jensen in which plaintiff Sophie Haykl was a passenger.   The passenger was injured and she and her father sued all the named defendants.   Defendant Jensen defaulted in appearance.   Decision upon a motion made on the trial by Granger & Co. for a dismissal of the complaint and a direction of a verdict was reserved and the case left to the jury.   The jury found for plaintiff against all the defendants, and the aforesaid motions and a motion in the alternative for a new trial, all made by Granger & Co., were denied and judgments entered against all defendants for $2,719.74 for plaintiff Sophie Haykl and $386.50 for her father.   Defendants Drees and Weissgerber have not appealed and we may ignore the jury findings against them on their counterclaims against Granger & Co.

Defendant Granger & Co. was engaged in the wholesale grocery business, in which it maintained no motor vehicles of its own.   It employed defendant Jensen as a salesman of its goods, working for commissions only.   He was privileged to obtain business from any grocers in the city of Buffalo and vicinity who were not already customers of Granger & Co.   He had a drawing account each week and his commissions were figured at the end of each month.   Commissions were credited to him as fast as orders were turned in and earned commissions were settled up at the end of each month.   He had no obligations as to working times in any respect nor as to reporting at the Granger & Co. place of business except for general sales meetings on Saturday mornings.   His duties involved not only sales but collections.   Sales were made both on a cash and credit basis, all credits being subject to the approval of Granger & Co.   The customers were obligated directly to Granger & Co. and not to

Jensen and the company did all the billing. Jensen had no other occupation and used his own automobile in the business mentioned, all to the knowledge of. Granger & Co. Plaintiff Witaszek was a customer of Granger & Co., and had been for some months. He had been obtained as a customer by Jensen and on the day of the mishap mentioned he was indebted to Granger & Co., for about seventy dollars. Jensen went to his store on the day of the accident, March 27, 1933, to collect this bill. He testified that while he had been asked "to get that [the Witaszek] account in shape," no representative of Granger & Co. had instructed him to call on Witaszek on the night of the accident and that so far as he knew no representative of appellant knew that he was to make that call. While at Witaszek's store, it appearing that Witaszek did not have the money to pay and that he had money coming to him from a customer in Buffalo, it was arranged that Jensen, accompanied by Witaszek's daughter, the plaintiff Sophie, should call on this customer to make the collection for Witaszek in order that he might pay his account to Granger & Co. The trip was taken by Jensen and Sophie in Jensen's car and in the course of it the collision occurred which has been mentioned.

The only moot question before us is the business relationship existing between Jensen and Granger & Co. at the time of the mishap.

There being no serious conflict in the evidence concerning the arrangements and transactions between Jensen and Granger & Co., the question of their business relationship was one of law for the court. The trial justice in his charge told the jury in substance that Jensen was the servant of Granger & Co. at the time of the mishap and that the jury should determine whether or not at that time Jensen was acting within the scope of his employment. If the pronouncement of the court as to the relationship was correct, the finding of the jury that Jensen was acting within the scope of his employment when the accident occurred was reasonable. However, we disagree with the view taken by the trial court as to the relationship.

In the situation here involved, it is well-settled law that unless defendant Granger & Co. was not only interested in results but had the right to control Jensen as to all the material details of his work — whether or not such control was exercised — Jensen was not a servant of Granger & Co., but was an independent contractor. Interest in results only will not suffice as a basis for a master and servant relationship. Right to control as stated is essential. The pertinent rule — often quoted by our court of last resort — is that " he is to be deemed the master who has the supreme choice, control,

and direction of the servant, and whose will the servant represents, not merely in the ultimate result of his work, but in all its details." (Shear. & Redf. Neg. [4th ed.] p. 267.) It is " ' not only what shall be done, but how it shall be done.' " (*Singer Manufacturing Co.* v. *Rahn*, 132 U. S. 518.) Additional salient facts, which are not in substantial dispute, are divulged by the record:

(1) Jensen was not bound to work all the time for Granger & Co. nor was he prohibited from working for others; (2) he could solicit as or when or where (in Buffalo and vicinity) he pleased so long as he avoided Granger & Co.'s old customers (as to this and as to other phases of the case see *Howitt* v. *Hopkins*, 219 App. Div. 653; affd., 246 N. Y. 604; *Peer* v. *Babcock*, 230 id. 106, 114, 115); (3) Jensen's employment was not continuous; (4) no guaranty was required of Jensen as to the extent of results obtained by him; (5) no other work was done by him for Granger & Co. at odd times; (6) Jensen was working on a commission basis only; (7) Granger & Co. did not reserve the right to supervise or inspect and did not supervise or inspect the work of Jensen during its performance; and Jensen received no allowance for fuel or for the upkeep of his car. Here it should be observed that " the right to control the mode and manner of the work " reached no farther than Jensen's attending sales meetings on Saturday mornings and his reporting prospects for credit arrangements by Granger & Co. None of the details as to routes traveled, times for work, manner of working, *et sim.*, were subject to any control by Granger & Co. Jensen did not " represent a master " when he sought customers. If it be argued that he did so when he made collections, the answer is that that was but an incident of his main contractual occupation, *i. e.*, obtaining new customers for Granger & Co. The ownership of the car by Jensen is of advantage to appellant although it is not a controlling factor. (*Brown* v. *Steamship Terminal Operating Corp.*, 267 N. Y. 83; American Law Institute, Restatement of the Law of Agency, p. 539.)

The picture presented by the testimony impresses us as requiring a determination that Jensen at the time of the collision was an independent contractor, not a servant of Granger & Co. The cases of *Buck* v. *Standard Oil Co.* (224 App. Div. 299; affd., 249 N. Y. 595) and *Curran* v. *Buckpitt* (225 App. Div. 380), upon which respondents place reliance, are not in point. In the *Buck* case the corporate defendant was held to be the master for the reason that the man who was held to have performed a negligent act to the damage of plaintiff was at the time under a contractual obligation to the corporate defendant to protect its property and was in the act of doing so. In the *Curran* case a master and servant relation-

ship was found because the assault was committed by the defendant's servant sent out with replevin papers by the defendant (master) as his representative on a specific mission, *i. e.*, to repossess a phonograph for defendant. We find no authority in New York or elsewhere adequately supporting respondents' contention. On the contrary, in *Aldrich* v. *Tyler Grocery Co.* (206 Ala. 138; 89 So. 289) and *Barton* v. *Studebaker Corp. of America* (46 Cal. App. 707; 189 P. 1025), both as to their facts and the law applied, we find well-reasoned opinions, sustained by numerous cited authorities, squarely in support of appellant's claim that Jensen was an independent contractor. The case of *Wescott* v. *Young* (275 Mass. 82; 175 N. E. 153) also furnishes strong support for appellant. In that case — a material detail not involved in the case at bar — the defendant made an allowance to Young (occupying the same position as defendant Jensen in the instant case) for the upkeep of his automobile, and had authority to direct Young as to the people upon whom he should make business calls. The cases of *Sudowski* v. *Toledo Scale Co.* (243 App. Div. 553); *Howitt* v. *Hopkins* (*supra*) and *Hopkins* v. *Empire Engineering Corp.* (152 App. Div. 570) are also of some value to appellant. (See, also, *Matter of Litts* v. *Risley Lumber Co.*, 224 N. Y. 321, 324, 325, and *Kirby* v. *Lackawanna Steel Co.*, 109 App. Div. 334.)

The inference we draw from this record is that it points directly to the conclusion as a matter of law that Jensen at the time of the mishap was an independent contractor and not the servant of Granger & Co. Therefore, · as to appellant the judgments and orders should be reversed on the law and facts, with costs, and the complaint dismissed, with costs.

In first action: All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

In first action: Judgment and order reversed on the law and facts, with costs, and complaint dismissed, with costs.

In second action: All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

In second action: Judgment and order reversed on the law and facts, with costs, and complaint dismissed, with costs.