JOSEPH BURDO, as Administrator, etc., of MINNIE BURDO, Deceased, Respondent, *v.* METROPOLITAN LIFE INSURANCE COMPANY, Appellant.

Third Department, April 27, 1938.

*Rosendale & Dugan [P. C. Dugan* of counsel], for the appellant.

*Leary & Fullerton [James A. Leary, Walter A. Fullerton* and *James F. Carroll* of counsel], for the respondent.

HILL, P. J. Plaintiff's intestate came to her death from accidental injuries received when she was struck at a street crossing by an automobile driven by Joseph Mulchy, defendant's assistant manager at Saratoga Springs. A jury has found that Mulchy drove the car in a negligent and careless manner, and thereby caused the death. The evidence sustains that finding. As to this the court is in accord.

Our divergent views are epitomized in a sentence from the dissenting opinion: " There would probably be little debate over the liability of the defendant, if the assistant manager Mulchy were the ' servant ' of the employer." " Servant " and " employee " are nearly synonymous. The first is used most frequently in connection with employment in the domestic field.

A little before eight o'clock in the morning on the day of the accident, Mulchy, driving his automobile, left his home in Saratoga Springs and started upon his work. The accident happened in the evening while he was returning to his home where the automobile was kept in his garage. In the interim he had traveled substantially twenty-five miles, visiting the villages and hamlets of Corinth, Ashgrove Farms, Middle Grove, Greenfield Center and Porter's Corners, calling upon and collecting premiums from about fifty of defendant's policyholders, half of whom lived outside the hamlets and villages and off the main highway traversed by passenger buses. Defendant's manager, Mr. Schmoll, outlined the route over which Mulchy was to travel and listed those upon whom he was to call. It was known and understood by Schmoll that Mulchy would make this trip in his own automobile, and one dollar and fifty cents was allowed for transportation. That it would have been impractical for Mulchy to have made the trip by public bus, even to call upon the policyholders living on the bus line, is shown by the answer to a question: " By the Court: If that were so, when you stopped at the first one on the main line, would the bus wait for you while you made a collection or would you have to wait until the next day to get the bus to go to No. 2? By the Witness: I would have to walk." Even greater obstacles would be presented as to the calls made upon dwellers on unimproved highways.

The defendant had knowledge that Mulchy was using his car in its service and that he would be unable to cover the territory required in the time allotted in any other manner. When Mulchy first applied for a position with defendant in the city of Utica, the manager asked him if he owned an automobile, and when he was transferred to Saratoga Springs, Schmoll made the same inquiry.

Mulchy received sixty dollars a week and under certain contingencies commissions and expenses. He devoted a portion of his time to the solicitation of new business and at other times he collected premiums. His work was controlled and directed by the local manager to whom he reported and who fixed his hours and assigned the particular locality or route where he was to work. For some weeks he had been engaged in collecting premiums, almost to the exclusion of all other work. On each of three days of the week he traveled about twenty-five miles on country routes. He

was an employee, not an independent contractor. (*Hexamer* v. *Webb*, 101 N. Y. 377, 383.) His service for defendant began when he left home in his automobile *en route* to the villages and hamlets mentioned. (*MacClelland* v. *Dodge Brothers*, 233 App. Div. 504; *Theyken* v. *Diplomat Products, Inc.*, 243 id. 822; affd., 268 N. Y. 658; *Crowell* v. *American Fruit Growers, Inc.*, 227 App. Div. 678; affd., 253 N. Y. 543.) " Of that journey [the outgoing] the homeward journey was a necessary counterpart." (*Gibbs* v. *Macy & Co., Inc.*, 214 App. Div. 335; affd., 242 N. Y. 551.) When the accident happened Mulchy was on the direct route to his home and garage from the residence of the last policyholder upon whom he called that day.

The defendant is liable if he was its employee and was using the automobile with its knowledge and consent and in its business. (*Brown* v. *Steamship Terminal Operating Corp.*, 267 N. Y. 83, 90.) The evidence sustains the finding of the jury that such were the facts.

The judgment should be affirmed.

RHODES and HEFFERNAN, JJ., concur; McNAMEE and CRAPSER, JJ., dissent, McNAMEE, J., with an opinion, in which CRAPSER, J., concurs.

McNAMEE, J. (dissenting). The defendant employed Mulchy as assistant manager of a district, including the city of Saratoga Springs and outlying territory. His duties were stated in a written contract, and included the employing and instructing of agents, inspecting, soliciting insurance, collecting premiums, and generally promoting the company's business, and the giving of his time to that work to the exclusion of other business. The contract provided that Mulchy personally would pay all of the expenses incidental to his position, including transportation, except such as the company should agree in writing to pay. The contract provided for a weekly salary, with commissions, and such other compensation as the employer might grant. It did not prescribe the exact field to be covered, the routes to be followed, nor the method of transportation to be used. It made no provisions requiring or permitting the ownership or driving of an automobile by Mulchy.

This assistant manager owned an automobile at the time he was employed and thereafter, licensed in his own name, stored, repaired and maintained by him at his own expense, and used for the pleasure of himself and his family. He also used the automobile to go to and from his work, whether at the office in Saratoga Springs, or elsewhere, and used it also in his " field work." Outside of the city of Saratoga Springs he was free to travel by railroad, bus, taxi, or by the use of his own car, as he chose, and the expenses

thus incurred, and other traveling charges, as a matter of practice, were repaid to him by the company. No expenses incurred in Saratoga Springs were allowed. When he used his own car outside he was allowed a mileage charge of five or six cents, approximating that of bus travel, the same as if he rode on a bus or other conveyance. He was not required to do any particular duty at any particular time. His duty was to cover the territory, and to do that in the manner and by the means that he would select. There is no substantial dispute about the facts.

On December 1, 1936, at five-forty-five P. M., the assistant manager was traveling home from his work " in the field," and, as it was claimed by the plaintiff and found by the jury, he negligently ran against plaintiff's intestate, and inflicted upon her injuries from which she died. And it is for this act of Mulchy that the defendant company has been declared liable by the judgment herein.

The trial judge submitted to the jury, among other similar things, the questions whether the assistant manager surrendered his right of control and direction of the car to the employer; and what was the implied direction of the manager to the assistant manager, and what the manager understood, " had in his mind," in that particular. There is no evidence in the case of any direction, understanding, or intention of the manager relative to the use of the car, and none of any express or implied agreements which comprehended a surrender by the assistant manager Mulchy to the employer of any direction or control of the automobile, or of any right to either. Not only were the mere mental processes of the manager of the company submitted to the jury, but the decisive element of the case, viz., the right to control the automobile and direct its use and operation, was submitted without any evidence to support a finding in favor of the plaintiff. There is no evidence that the manager gave any directions to the assistant manager about the manner in which the latter's work would be performed, nor even what form of transportation he would resort to.

There would probably be little debate over the liability of the defendant, if the assistant manager Mulchy were the " servant " of the employer. That word " indicates the closeness of the relationship between the one giving and the one receiving the service rather than the nature of the service or the importance of the one giving it." (Restatement of the Law of Agency, § 220, pp. 483, 484.) Ordinarily " a principal is not liable for the incidental acts of negligence in the performance of duties committed by an agent who is not a servant. * * * Those rendering service but retaining control over the manner of doing it are not servants.

\* \* \* An agent who is not subject to control as to the manner in which he performs \* \* \* his agency is in a similar relation to the principal \* \* \* as one who agrees only to accomplish mere physical results." (Id. p. 485.) And the same authority says again that " A master is not liable for injuries caused by the negligence of a servant in the use of an instrumentality \* \* \* over the use of which it is understood that the master is to have no right of control." (Id. § 239, p. 538.) And if the master cannot direct the manner of use, the servant has a free hand; and even if used in the employer's business, it " is not within the scope of the employment." (Id. p. 540.) And on the same page the Restatement gives an application of the rule: " The master agrees with A, his servant (sic), to pay for A's transportation upon public vehicles such as railway trains and street cars, A being permitted to use his own automobile for transportation, charging to the master the regular train fare. A is paid by the week, with indefinite hours of labor. In going to a place at which he is to perform work for the master, A drives his own car, carrying thereon necessary tools and materials belonging to the master. In the absence of evidence that A owes P any duty of obedience in the details of operating the automobile, such driving is not within the scope of employment."

It seems to us that Mulchy was not a " servant," within the meaning of the common law. The evidence gives no warrant for holding that the defendant corporation had any control or right of control over the automobile, its direction, or its operation, or that the company attempted to secure or to exercise such a right. And it is this right of control, or this exercise of control, over the instrumentality in the hands of the agent that determines the liability of the principal. In the absence of such right or exercise of control, the agent is not a servant, and the employer is not responsible for his incidental acts of negligence in the performance of his agency. We regard that principle as amply illustrated and clearly applied in a number of authorities in this State. (*Malloy* v. *Scott*, 248 App. Div. 882; affd., 275 N. Y. 496; *Howitt* v. *Hopkins*, 219 App. Div. 653; affd., 246 N. Y. 604; *Haykl* v. *Drees*, 247 App. Div. 90; *Rosenberg* v. *Syracuse Newspapers, Inc.*, 248 id. 294.) The same principle is held, and the same application is made in foreign jurisdictions. (*Wescott* v. *Henshaw Motor Co.*, 275 Mass. 82; 175 N. E. 153; *Wesolowski* v. *John Hancock M. L. Ins. Co.*, 308 Penn. St. 117; 162 A. 168; *Hilsdorf* v *City of St. Louis*, 45 Mo. 94; *McCarthy* v. *Souther*, 83 N. H. 29; 137 A. 445.) The respondent recognizes on page 29 of his brief that " the question of control " is " the vital question in the case at bar," and on page 27 quotes

*Marsh* v. *Beraldi* (260 Mass. 225, 230, 231; 157 N. E. 347, 349): " The test of the relation is the location of the power of control. If it rests in the employer, the employed is a servant. If it rests in the employed, he is an independent contractor."

The judgment should be reversed, and the complaint dismissed.

CRAPSER, J., concurs.

Judgment and order affirmed, with costs.