BEATRICE A. NERO, an Infant by Her Mother and Natural Guardian, BEATRICE R. NERO, et al., Respondents, v RIS PAPER CO., INC., et al., Appellants; JANICE A. LAYTON, Individually and as Administratrix of the Estate of THOMAS W. LAYTON, Deceased, Respondent-Appellant, et al., Defendants. (Action No. 1.)

RONALD A. PELLETIER, SR., as Administrator of the Estate of ANDREA C. PELLETIER, Deceased, Respondent, v RIS PAPER CO., INC., et al., Appellants; JANICE A. LAYTON, Individually and as Administratrix of the Estate of THOMAS W. LAYTON, Deceased, Respondent-Appellant. (Action No. 2.)

First Department, January 12, 1978

### APPEARANCES OF COUNSEL

*William F. McNulty* of counsel *(Anthony J. McNulty* with him on the brief; *Joseph F. Onorato,* attorney), for Ris Paper Co., Inc., and another, appellants.

*Stanley H. Kaufman* of counsel *(Diamond, Rutman & Costello,* attorneys), for respondent-appellant.

*Charles F. McGuire* of counsel *(Lipsig, Sullivan, Mollen & Liapakis,* attorneys), for Beatrice Nero and another, respondents in Action No. 1.

*Jerome J. Goldstein* for Ronald A. Pelletier, Sr., respondent in Action No. 2.

### OPINION OF THE COURT

LANE, J.

This action arises out of a collision which occurred on Route 17 in Middletown, New York, at about 2:30 in the morning on October 17, 1972. Route 17 at Middletown is a highway with two eastbound lanes and two westbound lanes. The eastbound and westbound lanes are separated by a 30-foot-wide grass mall. The plaintiff, Beatrice Ann Nero, together with her girl friend Andrea C. Pelletier, was riding in a car owned by Joseph T. Nero, Beatrice's father. At the time of the accident, Miss Pelletier was driving and Miss Nero was sitting adjacent to her. The Nero car was traveling westbound on Route 17 when another car, owned by Janice A. Layton and driven by her husband Thomas W. Layton, approached them. Thomas Layton was employed by the defendants Ris Paper Co., Inc., and John Carter & Co., Inc. The Layton automobile was proceeding in an easterly direction on the westerly side of the highway; that is, it was traveling in the wrong direction. This resulted in a head-on collision.

As a result of the accident, the drivers, Pelletier and Layton, were killed, and Beatrice Ann Nero, the sole survivor of the crash, was severely injured. Nero sued Ris Paper Co., Inc., John Carter & Co., Inc., Janice Layton, individually and as administratrix of the estate of her deceased husband, and the

estate of Pelletier for her personal injuries. The estate of Pelletier sued Ris Paper Co., Inc., John Carter & Co., Inc., and Janice Layton, individually and as administratrix of the estate of her deceased husband, for wrongful death.

At the trial, a tractor-trailer driver named Saam, who was employed by Queens Farms, located in Deposit, New York, testified as the sole eyewitness to the accident. (Beatrice Ann Nero had no independent recollection of what had occurred.) Saam testified that while he was driving his tractor-trailer on the eastbound side of Route 17, in an easterly direction, he saw Layton enter the westbound side of the highway through the exit road and travel easterly on the westbound side of the highway. He blew his horn to attract Layton's attention to the fact that he was driving in the wrong direction at about 55 or 60 miles per hour, and he witnessed the collision. In addition, State Trooper Hudson, who arrived at the scene after the accident, was permitted to testify regarding his personal observations of the positions and locations of the two cars after the accident.

The evidence at trial clearly indicated that Layton was driving in the wrong direction on the highway at the time of the accident. The issue of liability with regard to the defendant Layton and his wife was not submitted to the jury. The Trial Judge charged that Layton was guilty of negligence as a matter of law in driving his wife's car on the wrong side of the divided highway, and, further, that his negligence was the proximate cause of the collision. The court did submit as an issue of fact for determination by the jury whether or not the employers of Layton—Ris Paper Co., Inc., and John Carter & Co., Inc.—were liable to the plaintiffs on the theory of *respondeat superior.*

The jury thereafter rendered a verdict in the sum of $250,-000 in favor of the plaintiff Beatrice Ann Nero, in her personal injury action, and in the sum of $8,000 in favor of her mother, the plaintiff Beatrice R. Nero, in her cause of action for medical expenses and loss of services, against Ris Paper Co., Inc., and John Carter & Co., Inc., and also against Janice Layton, individually and as administratrix of the estate of her deceased husband. In the Pelletier wrongful death action, the jury rendered a verdict in the sum of $60,000 in favor of the estate of the decedent and against all of said defendants. In the Nero personal injury action, however, the jury found in favor of the defendants Ronald A. Pelletier, Sr., as administra-

tor of the estate of Andrea C. Pelletier, deceased, and Joseph T. Nero, as it would consistently have to in order to find in favor of Pelletier in the action for the wrongful death of his daughter, Andrea C. Pelletier.

Ris Paper Co., Inc., and John Carter & Co., Inc., in a posttrial motion, moved for common-law indemnity against Mrs. Layton, individually and as administratrix of the estate of her husband. The court denied the motion without prejudice to the right of the corporate defendants to commence a plenary suit against the deceased employee on their indemnity claim.

We do not find that the awards of the jury were excessive, or that the errors alleged by the defendant Layton, individually and as administratrix, warrant reversal. We do conclude, however, that the defendants Ris Paper Co., Inc., and John Carter & Co., Inc., should not have been held liable under the doctrine of *respondeat superior.* In view of the fact that we are concluding that the defendants should not have been held liable on the issue of *respondeat superior,* we do not reach the question as to whether or not they were entitled to indemnity.

The facts relating to Thomas Layton's employment, as revealed at trial, follow: Layton was a salesman for Ris Paper Co., Inc., in the Poughkeepsie-Middletown area and made his headquarters at the Middletown Motel in Middletown. When he was working, he used his own car or his wife's car to service his territory, and the company reimbursed him for the use of his car on a mileage basis. He was also reimbursed for any other business expenses which he incurred.

Certain invoices were admitted into evidence which reflected the orders obtained by Layton during the month of October, 1972. None of the orders was made out by Layton himself but, rather, the customers made them out on order forms which bore a code identification number of Layton. The orders were mailed by the customers directly to the Albany branch office of the defendant Ris Paper Co., Inc. The items were admitted in evidence solely to establish that the orders were credited to the commission account of Layton. There was, however, a paper-cutting knife, as well as sample books and an order pad found in the trunk of Layton's automobile after the collision. This knife apparently was picked up from one of the clients of Layton for sharpening. This sharpening was incidental to the services offered by Ris Paper Co., Inc., and John Carter & Co., Inc.

The expenses of Layton were reflected in checks received on a bimonthly basis in the sum of $87.50 each, which covered all his expenses, including the use of his or his wife's car. He was not required to account on a mileage basis with regard to the use of the car. The allowance included mileage, rental of the room occupied at the Middletown Motel, and the cost of all meals while in the area. After deducting these kinds of expenses from the allowance, it was clear that there would be not much, if anything, left for entertaining customers or prospective customers of Ris Paper Co., Inc., or John Carter & Co., Inc.

Testimony at the trial revealed that costs of meals in that area would involve a total expenditure of approximately $10 per day. There was no evidence at all adduced at the trial which would indicate that Layton was entertaining customers at the time of the occurrence or immediately prior to the occurrence. In fact, evidence was introduced which indicated that Layton did not entertain customers in the evenings; that he was seen in various taverns and restaurants in the Middletown area *alone,* and that various printers in the Middletown area who placed orders with Layton testified that they never were entertained by him.

Testimony of a barmaid at the Red Rooster in New Hampton established that on the evening of the accident Layton had dinner alone. Another barmaid at a lounge in Middletown also testified that on the night of the accident Layton entered the lounge "alone," had a bottle of beer, and left the premises "alone" at about 12:30 A.M. It is on the basis of this evidence adduced at the time of trial that the defendants Ris Paper Co., Inc., and John Carter & Co., Inc., moved to dismiss the complaint as against them. The court declined and presented the issue to the jury.

We hold that the court erred in denying the motion to dismiss.

The history of the assignment of liability to an employer for the acts of his employee has been outlined by Chief Judge LEWIS as follows: "In *Rounds v. Delaware, L. & W. R. R. Co.* (64 N. Y. 129), Judge ANDREWS, writing for a unanimous court, said: 'There is, at this time, but little conflict of judicial opinion in respect to the general rule by which the liability of a master for the misconduct of his servant, resulting in injury to third persons, is to be tested and ascertained. In *Higgins v. The Watervliet Turnpike Company* (46 N. Y. 23), this subject

was considered by this court, and the rule was declared to be, that the master was responsible *civiliter* for the wrongful act of the servant causing injury to a third person, whether the act was one of negligence or positive misfeasance, *provided the servant was at the time acting for the master, and within the scope of the business intrusted to him. The master is liable only for the authorized acts of the servant, and the root of his liability for the servant's acts is his consent, express or implied, thereto.* When the master is to be considered as having authorized the wrongful act of the servant, so as to make him liable for his misconduct, is the point of difficulty. Where authority is conferred to act for another, without special limitation, it carries with it, by implication, authority to do all things necessary to its execution; and when it involves the exercise of the discretion of the servant, or the use of force towards or against another, the use of such discretion or force is a part of the thing authorized, and when exercised becomes, as to third persons, the discretion and act of the master, and this, although the servant departed from the private instructions of the master, *provided he was engaged at the time in doing his master's business, and was acting within the general scope of his employment.'* " (Emphasis supplied.) *(Sauter v New York Tribune,* 305 NY 442, 444-445.)

The rule has similarly been enunciated in *Jones v Weigand* (134 App Div 644, 645-646) as follows: "The master is liable only for acts done by the servant in the course of his employment as such, but mere disregard of instructions or deviation from the line of his duty does not relieve the master of responsibility. Wrongful acts are usually in violation of orders or in deviation from the strict line of duty. The test is whether the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions. If the servant for purposes of his own departs from the line of his duty so that for the time being his acts constitute an abandonment of his service, the master is not liable; but to constitute an abandonment of the service the servant must be serving his own or some other person's purposes wholly independent of his master's business."

Our problem lies not in the enunciation of the principles of the doctrine of *respondeat superior* but, rather, in the application of those principles to the specific facts of our case. To that

end, a review of factual situations as outlined in earlier cases would be most helpful.

In *Smith v Fonda* (265 App Div 977, app dsmd 294 NY 655), the plaintiff was hit by an automobile driven by the defendant Fonda, an employee of the defendant Shadinger & Redick Company, Inc. Fonda had been driving home from work. At the time of the accident he was carrying no merchandise of the defendant corporation and was engaged in no errand for it. He had deviated from his usual route home in order to take a fellow-employee to his own house, which act was purely voluntary on the part of Fonda. The court held that Fonda was not acting in the scope of his employment at the time of the accident and found in favor of the defendant corporation.

In *Lundberg v State of New York* (25 NY2d 467), the decedent was killed when struck by an automobile owned and operated by John Sandilands, an employee of New York State. Sandilands received a mileage allowance for the use of his automobile, as well as living expenses while he was away from home. Sandilands at the time of the accident was driving from his home in Buffalo, New York, after having spent the weekend there. The State had no control over his activities on weekends, and the court therefore found that, since Sandilands was driving to satisfy his own desire and not an obligation of his employer, the State could not be held liable for injuries occurring at that time.

Decisions in other cases, however, have resulted in imposition of liability upon the employer.

*Burdo v Metropolitan Life Ins. Co.* (254 App Div 26, affd 279 NY 648) involved a plaintiff who was hit by an automobile driven by one Mulchy, the defendant's assistant manager. Mulchy's route to collect premiums on behalf of the defendant Metropolitan Life Insurance Company was set by his local manager. He was an employee of Metropolitan and, of necessity, continued in its employ until he reached home. The accident occurred when Mulchy was on his way to his home from the residence of the last policyholder. Since the driver Mulchy was under the total control of Metropolitan with regard to the routes which he was going to travel, he was properly deemed to be acting within the scope of his employment at the time of the accident.

Similarly, in the case of *Jones v Weigand* (134 App Div 644, *supra),* the driver of the hearse which injured the plaintiff was on his way back to the funeral home. He stopped to pay a visit

and then returned the hearse to the stables. The accident occurred after the personal visit but on the way back to the stables, and the court found that there was a resumption of employment at the time of the occurrence and therefore the employer was held liable under the doctrine of *respondeat superior.*

In *Ulm v Western Union* (258 App Div 776), the employer was held liable because the messenger's duties were not completed at the time of the accident. In *Schultze v McGuire* (241 NY 460), the chauffeur was deemed to be on his employer's errand though he had stopped off for his own personal errand in the interim.

The test for casting liability upon an employer, based on the doctrine of *respondeat superior,* was stated by Chief Judge CARDOZO as follows: "If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own [citation omitted]. If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose though the business errand was undone, the travel is then personal, and personal the risk." *(Matter of Marks v Gray,* 251 NY 90, 93-94.)

It would appear that in the case at bar the evidence at the trial established that the task of Layton at 2:30 A.M. on October 17, 1972 was purely personal in nature, and therefore, accordingly, the risk itself was also personal. There was not a scintilla of evidence adduced which would indicate that at 2:30 A.M. on the date in question Layton was operating on behalf of his employer. He does not fit within the factual mold outlined in the cases above which resulted in assigning liability to the employer under the doctrine of *respondeat superior.* The case at bar, rather, falls within the strictures of *Smith v Fonda* (265 App Div 977, *supra),* and *Lundberg v State of New York* (25 NY2d 467, *supra),* in which cases the employee was found to be acting for his own personal benefit.

The recent case of *Makoske v Lombardy* (47 AD2d 284, affd on majority opn 39 NY2d 773) does not require us to come to a contrary conclusion. In the case of *Makoske,* Montgomery Ward & Company, Inc., was conducting seminars in Saratoga, New York. Certain individual employees were required to take their fellow-employees in their own personal automobiles

to the conference in Saratoga. On the last full day of the training session, a group of trainees, together with the plaintiff Makoske, had been discussing the idea of going to Saratoga to see the raceway. The mobility of the employees of Montgomery Ward was limited in view of the fact that Saratoga, a resort community, had no readily available means of transportation other than those that could be provided by coemployees. Montgomery Ward in any event, it was found by the majority, could impose restrictions on any extracurricular activities to the extent of the minimum-control requirement contemplated by case law (see, e.g., *Lundberg v State of New York, supra,* p 471). The majority therefore held that the doctrine of *respondeat superior* could be applied, and Makoske's employer, Montgomery Ward, could be held liable for her injuries.

Such is not the case at bar. Layton was not required to leave his motel in the early-morning hours, and his errand clearly at that time of night was solely personal. At the very least, to say that his was a business errand is purely speculative. The barmaid's testimony established that Layton was alone until 12:30 A.M. No evidence was adduced to show that Layton was on his employer's business between 12:30 A.M. and 2:30 A.M., the time of the accident.

We conclude, therefore, that no factual issues in this regard were extant for submission to the jury, and the motion of the defendants Ris Paper Co., Inc., and John Carter & Co., Inc., to dismiss the complaint against them should have been granted.

Accordingly, the judgment of the Supreme Court, New York County (FEIN, J.), entered February 28, 1977 and resettled July 28, 1977 in favor of the plaintiffs against the defendants Ris Paper Co., Inc., and John Carter & Co., Inc., should be modified on the law to the extent of reversing the judgment against the defendants Ris Paper Co., Inc., and John Carter & Co., Inc., and dismissing the complaint as against them, and otherwise affirmed, without costs or disbursements. The separate appeal from the judgment, entered February 28, 1977, should be dismissed, without costs and without disbursements.

BIRNS, J. P., EVANS and LYNCH, JJ., concur.

Judgment, Supreme Court, New York County, entered on February 28, 1977, as resettled on July 28, 1977, unanimously modified, on the law, to the extent of reversing the judgment against defendants Ris Paper Co., Inc., and John Carter & Co.,

Inc., and dismissing the complaint as against them, and otherwise affirmed, without costs and without disbursements.

The separate appeals from the judgment entered on February 28, 1977 are unanimously dismissed, without costs and without disbursements.