## ELIZA O'REGAN *vs.* CUNARD STEAMSHIP COMPANY.

Suffolk. December 6, 7, 1893. — January 4, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Contract — Passage Ticket — Carrier — Limitation of Liability for Negligence — Conflict of Laws — Lex Loci Contractus.*

A.'s daughter, who lived in this Commonwealth, paid the local agent of a British steamship line for A.'s ocean passage from Ireland, receiving from the agent two papers, the first of which recited the receipt of a certain sum for a steerage passage of A. "by any steamer of this line in which there may be room after presentation of this ticket," and that, "to secure passage, the accompanying notice of intention to embark must be sent" to the steamship company within a certain time; and the second of which was a memorandum of a ticket issued by the agent for a steerage passage in favor of A., and stated that, should the passenger named decline coming, the money would be refunded, less the agent's commission, on production of the memorandum and ticket. The daughter sent to A. the first named paper, also a printed slip of paper entitled "Notice of intention to embark," which was given to her by the agent. A. presented these papers to the corporation's agent in Ireland, who gave A. in exchange another paper with the words printed on its face "Passengers' Contract Ticket," reciting the name of the steamship, the port of destination, and the date of sailing, and that A. should be provided with a steerage passage to such port; and also that "this contract is subject to the conditions set forth on the back hereof," one of which provided that the corporation was not liable for injury to the passenger arising from negligence of its servants. A. did not read or know of the conditions printed on the ticket. During the voyage, A. was injured by the negligence of the corporation's servants. *Held*, in an action against the corporation for such injury, that the contract by which the rights of the parties were to be determined was made in Ireland, and was governed by the English law by which the condition in question was valid.

Although a stipulation in a contract for carriage, relieving the carrier from liability for injuries resulting from the negligence of his servants, is against the policy of our law, if valid in the country where it is made it will be enforced here.

TORT, for personal injuries occasioned to the plaintiff by the negligence of the defendant's servants. Trial in the Superior

Court, before *Blodgett*, J., who reported the case for the determination of this court, in substance as follows.

The defendant is a corporation organized and existing under the laws of Great Britain, and owns and operates a line of passenger and freight steamers between Liverpool, Queenstown, and Boston.

The plaintiff, a widow, prior to September 25, 1891, resided in Cork, Ireland. She had at that time three daughters, all living in or near Boston. On September 25, 1891, the plaintiff embarked on the defendant's steamship Scythia, at Queenstown, to be by it conveyed to the port of Boston as a steerage passenger. During the voyage, and while the vessel was on the high seas, the plaintiff received the injuries complained of ; and the evidence at the trial tended to show that they were caused by the negligence of the defendant's servants on board the vessel.

The plaintiff was sent for, and her passage paid from Queenstown to Boston, by one of her daughters, a resident of Boston.

On March 18, 1891, the plaintiff's daughter applied at the office of Patrick Donahoe, in Boston, a duly authorized agent of the defendant for the sale of passage tickets to and from Great Britain, for the purchase of a steerage passage ticket for the plaintiff from Queenstown to Boston. The daughter paid Donahoe the sum of twenty dollars, the full price of the ticket, and received from him two papers, the first of which, containing the defendant's name in the heading and signed by Donahoe, recited the receipt of twenty dollars for a steerage passage of the person named in the margin, the present plaintiff, " by any steamer of this line in which there may be room after presentation of this ticket " ; that " to secure passage the accompanying notice of intention to embark must be sent at least eight days in advance to " the company , and that " this ticket is issued subject to conditions indorsed hereon," one of which was that the company was not " liable for loss of, or injury to, the passenger or his luggage, . . . whether arising from . . . negligence of the company's servants, whether on board the steamer or not." The second paper was a memorandum of a ticket issued by Donahoe for a steerage passage by the defendant's line of steamers in favor of the plaintiff; and stated that, " should the above passenger decline coming, the money will be

refunded, less agent's commission, on production of this memorandum and corresponding ticket." The second paper was kept by the daughter, and the first paper was immediately forwarded by her, enclosed in a letter, to the plaintiff in Cork. There was also sent to the plaintiff, in the same letter, a printed slip of paper, entitled "Notice of intention to embark," which was given to the daughter by Donahoe at the time the passage ticket was purchased.

The plaintiff, in September, 1891, before she took passage, went to the office of the defendant's agent in Cork, and presented there the first named paper and the notice of intention to embark, telling the agent that she wished to take passage on September 25. The agent took the papers and gave her a paper in return therefor, and instructed her to call again on the following Wednesday. She called again on Wednesday, and received in exchange for that paper another paper, and was instructed to present the latter at the defendant's office in Queenstown. She presented the last mentioned paper at the defendant's office in Queenstown, and received in exchange therefor another paper, containing the defendant's name printed in the heading on the face, and also the words "Passengers' Contract Ticket"; reciting the name of the steamship, the port of destination, and the date of sailing, and that "the person named in the margin hereof," the plaintiff, "shall be provided with a steerage passage to and shall be landed at the port of Boston"; containing full provisions as to board during the voyage; and also reciting that "this contract is subject to the conditions set forth on the back hereof," which were the same as those indorsed on the first named paper. She was told that she must present this paper when going on board the steamer at Queenstown, and also was told when and where to present herself to take the tender to go to the steamer. When going up the companionway from the tender to the steamer she held the last named paper in her hand, and it was taken by the defendant's officer on the vessel as she went aboard.

When the plaintiff's daughter purchased the passage, her attention was not called to any conditions, and she did not read the conditions on the first named paper; and she testified that she did not know that there were any conditions on the back thereof, limiting the liability of the defendant.

The plaintiff testified that neither at the office of the defendant in Cork, nor at its office in Queenstown, did the agents have any conversation with her in regard to the printed matter on, or the contents of, any of the tickets or papers, nor was any explanation given her by anybody about them; that she could not read or write, and did not know that the papers amounted to a contract limiting the defendant's liability, or that there was any condition on the papers limiting its liability; and that she paid no money to any of the agents of the defendant in Cork or Queenstown for any of the papers or for her passage.

It was agreed that, under the British law, carriers of passengers may, by special contract, expressly or impliedly assented to by the passenger, exempt themselves from liability for loss or injury to the passenger or his luggage arising from the negligence of the carrier's officers, agents, or servants.

Upon these facts, the judge ruled that the plaintiff could not recover; and directed a verdict for the defendant.

If the ruling was right, judgment was to be entered on the verdict; otherwise, a new trial was to be ordered.

*A. F. Hayden*, for the plaintiff.

*G. Putnam & T. Russell*, for the defendant.

KNOWLTON, J. The plaintiff was sent for and the price for her passage was paid by one of her daughters, a resident of Boston. It does not distinctly appear by the report whether the daughter, in paying for the passage, acted for herself or as an agent for the plaintiff, but the case has been argued by the plaintiff's counsel as if the plaintiff was the original contracting party acting through her daughter as her agent. It is a natural inference from the language of the report, that the daughter paid the money and made the contract in Boston as a principal, but for the benefit of her mother. Perhaps this is not very important, for if the defendant contracted with the daughter to carry the plaintiff, it would owe the plaintiff the duty to use proper care for her safety as a passenger as well as if the contract were made with the plaintiff herself.

The first question in the case is whether the contract made in Boston, or the more definite agreement subsequently made in Cork, is the contract by which the rights of the parties are to be determined. The contract made in Boston was not an

agreement that the plaintiff should take passage, and that the defendant should carry her to Boston at all events. It gave an option to the plaintiff to be carried or not, as she might choose, and, if her decision should finally be adverse to coming, it bound the defendant to pay back the money less the agent's commission. It did not state when or by what steamer the plaintiff would come, or whether she would come at all, and it could not be known whether it would ever be the duty of the defendant to carry her until she should first determine whether she wished to come. As soon as she gave the notice of her intention to embark in accordance with the terms of the original contract, she became entitled to a steerage passage on the next steamer sailing for Boston. If nothing else had occurred, her rights would have been finally fixed by the contract made in Boston; but if the parties chose, it was proper for them to make a new and more definite contract, containing provisions in regard to what before had been left indefinite and uncertain. The giving of the notice of intention to embark, the assignment of the plaintiff to a particular steamer, and the giving up of the old contract by both parties were a sufficient consideration for the making of the new one. If the plaintiff through her daughter as agent was the original contracting party at Boston, it is very clear that she could consent to give up the old contract and substitute a new one for it. If the contract made in Boston was her daughter's contract, and not hers, it was of a kind which contemplated the use of it by her for her own benefit, as evidence of the ownership of a valuable right personal to herself. Through the original contract she was brought into the position of a person entitled to passage on the defendant's steamer. As a person holding a ticket entitling her to a steerage passage on some steamer of the defendant, it was competent for her, before becoming a passenger, in connection with the notification of intention to embark, to enter into a new and more definite arrangement with the defendant in regard, not only to the steamer on which she should come, but also to other things affecting her interests, and to give up her rights under the original paper, and to take a new contract stating more fully the rights and duties of the parties. As the holder of a personal ticket procured and paid for by her daughter, she could

do this as well as if she had bought the ticket herself. Before the making of the new contract, the plaintiff had no definite agreement with the defendant in regard to her board during the voyage, and the stipulations in regard to that and other things, with the cancellation of the old ticket, furnished a valuable consideration for the substitution of a new one. After the new one was issued and accepted, the rights of the parties were governed by it. It was made in Great Britain, and it is governed by English law. It was not a mere check, but was a contract by which the plaintiff was bound, even if she did not read it. It was her duty to ascertain its contents, if she cared to know her rights. *Fonseca* v. *Cunard Steamship Co.* 153 Mass. 553. Although the stipulation relieving the defendant from liability for injuries resulting from the negligence of its servants is against the policy of our law, it is not immoral or illegal, and it being valid in Great Britain where it was made, it will be enforced on principles of comity by our courts. *Milliken* v. *Pratt*, 125 Mass. 374. *Scudder* v. *Union National Bank*, 91 U. S. 406. *Fonseca* v. *Cunard Steamship Co.*, *ubi supra*, and cases there cited.

If the rights of the parties had been left to stand on a contract made in Boston to transport thither a passenger from Queenstown in Ireland on a British ship, a question would have been involved which we have no occasion now to consider.

*Judgment on the verdict.*