Jasen, J.
(dissenting). My disagreement with the majority stems from their conclusion that plaintiff is entitled to summary judgment on the theory of conversion absent any proof whatsoever that defendant converted the indium metal to its own use or the use of another. The plaintiff bailor having failed to demonstrate in an evidentiary manner an intentional act by the defendant bailee which worked to deprive the plaintiff of its property, the defendant should not be held liable for the conversion of the stored property.
Certainly, I would not dispute many of the legal premises as aptly articulated by the majority, to wit: that a warehouseman is not an insurer of goods absent an agreement to the contrary and, thus, may not be held liable unless it fails to exercise reasonable care or converts entrusted goods to its own use (Uniform Commercial Code, § 7-204, subd [1]); that a warehouseman unable to return the bailed merchandise due to acts of negligence or conversion is liable for the full value of the goods on the date of the loss or conversion unless the parties have clearly agreed to a limitation upon the ware *669 houseman’s potential liability;[1] and that a contractual limitation on potential damages is enforceable only when a bailee is found negligent, and not when the warehouseman is determined to have converted the goods. (Uniform Commercial Code, § 7-204, subd [2].) I am also in agreement with the majority that plaintiff would be entitled to judgment had it elected to sue in negligence (in which case the contractual limitation on damages would retain its vitality),[2] but plaintiff has not done so, expressly limiting its cause of action to one of conversion. I cannot subscribe, however, to the majority’s conclusion that conversion, rather than negligence, can be presumed where the bailee is unable, for whatever reason, to explain the absence of stored property. Such a holding, in my" opinion, erases the critical distinction between negligence and conversion.
Conversion is viewed as requiring "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.” (Restatement, Torts 2d, § 222 A; see, generally, Prosser, Torts [4th ed], § 15.) Thus, one who does not intentionally exercise dominion or control over property is not liable for conversion, even though his act or omission may be said to constitute negligence. As was stated in Magnin v Dinsmore (70 NY 410, 417): "A conversion implies a wrongful act, a misdelivery, a wrongful disposition, or withholding of the property. A mere nondelivery will not constitute a conversion, nor will a refusal to deliver, on demand, if the goods have been lost through negligence, or have been stolen.” (See, also, Restatement, Torts 2d, § 224, Comment b.)
While proof of delivery to a bailee, of a demand for the property’s return, and of a failure of the bailee to return the goods establishes a prima facie case of negligence, these items of proof do not, in my opinion, constitute a prima facie case of conversion. The majority, obviously recognizing this fact, resorts to a newly created presumption of conversion in order to *670 sustain the judgment rendered plaintiff below. Such legal reasoning is unwarranted.
First, I would consider the law in this commercial area well settled and in accordance with the basic principle that a cause of action sounding in conversion will not be maintainable absent proof of intentional wrongdoing by the bailee. (See, e.g., Central School Dist. No. 3 of Towns of Amherst, Cheektowaga & Clarence v Insurance Co. of North Amer., 43 NY2d 878, affg 55 AD2d 1021; Reichman v Compagnie Generale Transatlantique, 290 NY 344, 352; Wamsley v Atlas S. S. Co., 168 NY 533, 536-538; Magnin v Dinsmore, 70 NY 410, 417-419, supra; see, generally, 5 NY Jur, Bailment, § 45.)[3] Here, plaintiff has presented no proof whatsoever of an intentional wrongdoing by defendant, and the majority’s conclusion that this "record * * * suffices to sustain plaintiff’s action in conversion” flies in the face of this established rule that an action for conversion requires an evidentiary showing that defendant bailee intentionally acted in a manner so as to deprive plaintiff of its property.
Second, I take issue with the policy reasons cited by the majority to support their obliteration of the distinction between negligence and conversion — that the bailee is in the better position to explain what happened to the goods and, thus, should be required to come forth with such explanation; and that instances of fraud would proliferate if a bailee could merely profess ignorance as to the goods’ disappearance and, then, claim as a sanctuary the contractual limitation of liability. While I would agree that a bailee should keep track of goods entrusted to it and that a bailee is in a better position than the bailor to explain what happened to the goods, it does not follow that its failure to produce the stored goods upon demand should serve as the vehicle to thrust upon the bailee the burden traditionally placed upon a plaintiff bailor when suing in conversion to demonstrate an intentional act by the defendant bailee which worked to deprive that plaintiff of its property. As a matter of public policy, I believe the burden of proving a wrongful act such as conversion should remain upon *671 the party claiming it, rather than the one accused of the wrongdoing.
There is simply no rational reason, under the guise of policy considerations, to shift the burden of coming forward with evidence of what "actually happened”[4] to the goods when a cause of action is framed in conversion. If the bailor is seeking to circumvent the contractual limitation on damages, agreed upon by the parties as a condition of the bailment, the bailor should be put to the task of demonstrating that the bailee converted the goods to its own use or the use of another. To hold otherwise is to permit the bailor to have its cake and eat it too. This is so because the bailor, as in this case, need not declare the full value of the goods and, as a result, is required to pay only a de minimus bailment fee, rather than a fee based on actual value; yet, upon loss of the goods, it may seek compensation for their full value even though it was never disclosed to the bailee.
This, it seems to me, is fundamentally unfair, especially when one considers that plaintiff voluntarily signed as a condition of bailment a contractual limitation of liability ($50) as to each article and item stored, although the true value of the three lots of indium was $100,000. The limitation of liability and the actual value of the stored property were known to plaintiff, and yet it chose not to avail itself of the opportunity to declare the full value of the goods to insure that it would be made whole in case of loss. Plaintiff had only to be candid about the true value of the goods entrusted to defendant and pay a storage rate commensurate with the risk in order to protect itself from any and all loss, whether such loss be precipitated by fraud, conversion, negligence, or otherwise. Having not exercised this option and, thus, having paid a much lower storage fee than what would have been charged had the bailee known the true value of the goods and been responsible for the same, the bailor should be held to the *672 terms of the bailment absent an affirmative evidentiary showing of intentional wrongdoing by the bailee. In this commercial setting, dealing as we are with sophisticated businessmen, we should not reach out and relieve the plaintiff of its failure to protect itself contractually. I can only read the majority’s opinion as doing violence to the law, without rhyme or reason.
For the above-stated reasons, I would reverse the order of the Appellate Division and grant summary judgment to defendant.
Chief Judge Cooke and Judges Jones, Wachtler, Fuchsberg and Meyer concur with Judge Gabrielli; Judge Jasen dissents and votes to reverse in a separate opinion.
Order affirmed.

. Of course, the validity of such a limitation is contingent upon the bailor being accorded the opportunity to increase the level of liability by payment of a higher storage fee. (See Uniform Commercial Code, § 7-204, subd [2].)

.1 would think it clear that the contractual limitation agreed to by the parties as a condition of the bailment applies both to damaged goods and lost goods. Indeed, to read the limitation as not encompassing lost goods would be patently absurd. What greater damage could a bailor sustain than the bailee’s failure to return the goods.

. Although this court did affirm a grant of summary judgment to plaintiff on a theory of conversion when the bailee failed to explain satisfactorily the loss of the goods in Procter & Gamble Distr. Co. v Lawrence Amer. Field Warehousing Corp. (16 NY2d 344), it has been conjectured that we "may have held the warehouseman absolutely liable without realizing it.” (White & Summers, Uniform Commercial Code [1972], p 674.)

. The majority stresses that their holding is limited to only requiring a warehouseman to establish, in the first instance, "a prima facie explanation for its failure to deliver” the goods (p 665, n 4). However, I derive little solace from this qualification, inasmuch as a bailee "is required to show not merely what might conceivably have happened to the goods, but rather what actually happened to the goods” (p 664, n 3 [emphasis added]). Since we are concerned with cases involving unexplained losses, the majority opinion sanctions, for all practical purposes, the imposition of full liability for the value of the goods stored whenever the bailee is unable to deliver the stored goods or explain "what actually happened to the goods.” This, I suggest, is an onerous burden upon the warehouseman.