**Sukhminder Singh BHATTAL and Mohinder Kaur Bhattal, Plaintiffs,**

v.

**GRAND HYATT–NEW YORK, and Hyatt Corporation, Defendants.**

No. 82 Civ. 7803–CLB.

United States District Court,
S.D. New York.

May 18, 1983.

John Galvin, Barnes, Richardson & Colburn, New York City, for plaintiffs.

John Altieri, Foglia & Altieri, New York City, for defendants.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Defendant, an innkeeper, seeks summary judgment in its favor in this alienage case, regulated by New York law. Plaintiffs, residents and citizens of India, registered as guests in defendant's Grand Hyatt Hotel in Midtown Manhattan on July 19, 1981 and were assigned Room 2946.[1]

---

1. There is no such entity as "Grand Hyatt-New York." Hyatt Corporation, a Delaware corporation having its principal office in Illinois, is

Following the customary practice in first class hotels in this City of the sort operated by defendant, plaintiffs turned over to the bell captain various pieces of personal luggage, which are now aid to have contained valuables of great significance, and this luggage was duly transferred by defendant's employees to plaintiffs' assigned hotel room.

Plaintiffs did not request that any of their valuables be placed in the safe depository provided by the hotel, nor did they enter into any "special agreement" with the hotel concerning their valuables, as is contemplated by § 200 of the New York General Business Law.

Shortly after arriving at their room with the luggage, plaintiffs left the hotel for luncheon with friends, locking their door with a key provided by defendant. On returning earlier the same evening, plaintiffs discovered that their luggage and the contents thereof were missing.

All things in the modern world which go wrong for reasons other than the application of Murphy's Law, seem to go wrong because of a particular sort of mechanical malevolence known as "computer error." Apparently defendant's front desk relies heavily on computer support, and as a result of computer error, employees of defendant transported plaintiffs' luggage from plaintiffs' room to JFK International Airport, along with the luggage of aircraft crew members of Saudi Arabian nationality, who had previously occupied Room 2946. In other words, the computer omitted to notice that the room had been vacated and relet to plaintiffs, and hotel employees responding to computer direction, included plaintiffs' luggage along with the other luggage of the departing prior guests. This is not to suggest that the Grand Hyatt-New York is a hotbed house, but apparently it was operating at 100% occupancy with no lost time between the departure of the Saudi Arabian aircraft crew members who had previously occupied the room, and the arrival of plaintiffs.

the operator of the "Grand Hyatt New York"

Needless to say, plaintiffs' luggage departed for Saudi Arabia and has not since been seen. A missing pearl is always a pearl of the finest water, and accordingly plaintiffs demand damages in the amount of $250,000.00, together with costs and attorneys fees.

There seem to be no disputed issue of fact as to what happened to the luggage.

Defendant's motion relies on § 200 of the New York General Business Law, which reads in relevant part as follows:

"§ 200. *Safes; limited liability*

Whenever the proprietor or manager of any hotel, motel, inn or steamboat shall provide a safe in the office of such hotel, motel or steamboat, or other convenient place for the safe keeping of any money, jewels, ornaments, bank notes, bonds, negotiable securities or precious stones, belonging to the guests of or travelers in such hotel, motel, inn or steamboat, and shall notify the guests or travelers thereof by posting a notice stating the fact that such safe is provided, in which such property may be deposited, in a public and conspicuous place and manner in the office and public rooms, and in the public parlors of such hotel, motel, or inn, or saloon of such steamboat; and if such guest or traveler shall neglect to deliver such property, to the person in charge of such office for deposit in such safe, the proprietor or manager of such hotel, motel, or steamboat shall not be liable for any loss of such property, sustained by such guest or traveler by theft or otherwise; but no hotel, motel or steamboat proprietor, manager or lessee shall be obliged to receive property on deposit for safe keeping, exceeding five hundred dollars in value; and if such guest or traveler shall deliver such property, to the person in charge of such office for deposit in such safe, said proprietor, manager or lessee shall not be liable for any loss thereof, sustained by such guest or traveler by theft or otherwise, in any sum exceeding the sum of five hundred dollars unless by special agreement in writing with such proprietor, manager or lessee."

hotel, formerly the Commodore.

Section 201 of the New York General Business Law, also of interest here, provides in relevant part that:

"§ 201. *Liability for loss of clothing and other personal property limited*

1. No hotel or motel keeper except as provided in the foregoing section shall be liable for damage to or loss of wearing apparel or other personal property in the lobby, hallways or in the room or rooms assigned to a guest for any sum exceeding the sum of five hundred dollars, unless it shall appear that such loss occurred through the fault or negligence of such keeper...."

The motion thereby presents the question of whether these statutes limit the liability of an innkeeper, in a case where the innkeeper, by his own agents, intentionally and without justification, took custody and control of plaintiffs' luggage and contents, without plaintiffs' authorization, and intentionally, although inadvertently, caused the luggage to be transported to Saudi Arabia. The Court concludes that the statutes do not extend so far as to protect the innkeeper under these facts.

Essentially what has taken place here is a common law conversion of property by defendant's agents. A fair reading of the amended complaint as amplified by the papers submitted on this motion indicates that plaintiffs state a claim for unintentional conversion under New York law, although not specifically so labelled. See *Meese v. Miller,* 79 A.D.2d 237, 436 N.Y.S.2d 496 (4th Dept.1981). Intentional use of property beyond the authority which an owner confers upon a user or in violation of instructions given is a conversion. *Quintal v. Kellner,* 264 N.Y. 32, 189 N.E. 770 (1934).

Here, defendant's employees entered plaintiffs' locked room, without plaintiffs' permission or knowledge, and removed their luggage, commingled it with the luggage of the Saudi Arabian aircraft crew members and placed it on a bus headed for Kennedy Airport. The Court infers that if the luggage was not stolen at Kennedy Airport, it arrived in Saudi Arabia and was eventually stolen by a Saudi thief who still had the use of at least one good hand. In this instance, the intentional acts of the defendant clearly constituted conversion under New York law.

Sections 200 and 201 of the New York General Business Law were adopted in the middle of the nineteenth century to relieve an innkeeper from his liability at common law as an insurer of property of a guest lost by theft, caused without negligence or fault of the guest. *Millhiser v. Beau Site Co.,* 251 N.Y. 290, 167 N.E. 447 (1929). These statutes and the cases cited thereunder by the defendant extend to the situation where there is a mysterious disappearance of valuable property, either as a result of a theft by an employee of the hotel—or a trespass or theft by an unrelated party, for whose acts the innkeeper is not responsible. The statutes are also intended to protect the innkeeper from the danger of fraud on the part of a guest in a situation where the property said to have disappeared never existed at all, or was taken or stolen by or with the privity of the guest. *Weinberg v. D–M Restaurant Corp.,* 53 N.Y.2d 499, 442 N.Y.S.2d 965, 426 N.E.2d 459 (1981); *Salisbury v. St. Regis Sheraton Hotel Corp.,* 490 F.Supp. 449 (S.D.N.Y.1980); *Federal Insurance Co. v. Waldorf-Astoria,* 60 Misc.2d 996, 303 N.Y.S.2d 297 (Sup.Ct., N.Y.Co., 1969); *Reichman v. Compagnie Generale Transatlantique,* 290 N.Y. 344, 49 N.E.2d 474 (1943); *Honig v. Riley,* 244 N.Y. 105, 155 N.E. 65 (1926); *Adler v. Savoy Plaza, Inc.,* 279 App. Div. 110, 108 N.Y.S.2d 80 (1st Dept.1951); *DePaemelaere v. Davis,* 77 Misc.2d 1, 351 N.Y.S.2d 808 (Civil Ct., N.Y.Co., 1973).

The reason for providing a hotel safe in compliance with § 200 and the reason for limiting a hotel's liability under § 201 is to protect against just such situations. When a hotel room is let to a guest, the innkeeper has lost a large measure of control and supervision over the hotel room and its contents. While housekeeping and security staff can enter the room at reasonable hours and on notice to any persons present therein, essentially, for most of the time at least, property of a guest which is present in a hotel room can be said to be under the

exclusive dominion and control of the hotel guest, rather than the innkeeper.

We have been cited to no case extending the limited immunity provided by statute against the common law liability of innkeepers, where the liability sought to be founded on the innkeeper was based on the exercise of unlawful dominion and control by the innkeeper himself, or his agents and employees acting in the course of their employment; as contrasted with mysterious disappearances due to causes unknown, or criminal acts of third parties or employees acting for themselves rather than for the employer. As noted above, it was only for the latter class of cases that the statutes granted immunity.

Since §§ 200 and 201 of the New York General Business Law operate in derogation of the common law liability of an innkeeper as insurer, courts have traditionally construed their application strictly. *Millhiser v. Beau Site Co., supra; Ramaley v. Leland,* 43 N.Y. 539 (1871); *Jones v. Hotel Lanham Co.,* 62 Misc. 620, 115 N.Y.S. 1084 (Sup.Ct., N.Y.Co., 1909).

In *Millhiser v. Beau Site Co.,* the plaintiff placed a package containing jewelry worth $369,800 in a safety deposit box maintained by the defendant hotel pursuant to § 200 of the New York General Business Law, without disclosing to the defendant's desk clerk the contents of the package or the value thereof. Upon retrieving the package, the plaintiff discovered that $50,000 worth of jewelry was missing. Subsequently, an employee of the defendant was arrested and convicted for the theft of the gems but the jewelry was never recovered.

In construing § 200, the New York Court of Appeals held that this provision limited the liability of an innkeeper for thefts of guests' property committed by its employees. However, the Court also stated that § 200 did not operate to limit the liability of an innkeeper for thefts committed by the innkeeper itself:

"... [S]uch a theft would be by the hotel keeper from the guest and not a theft from the hotel keeper. We read the statute to [limit the liability of the hotel

keeper for] ... a theft of ... articles from the hotel keeper and not a theft by the hotel keeper from the guest. The act of the defendant's employee in stealing the jewelry was a wrongful act, outside the scope of his employment and for his own enrichment. It was not in any sense the act of the defendant. [Citations omitted]." 251 N.Y. at 295, 167 N.E. 447.

■ Applying this rationale to the case at bar, the Court is compelled to conclude that §§ 200 and 201 do not limit the liability of an innkeeper for its conversion of guests' property. In this case, the plaintiff's luggage was not converted or stolen from the hotel by means of an employee theft or a fraud perpetrated by a third party. See *Adler v. Savoy Plaza, Inc.,* 279 App.Div. 110, 108 N.Y.S.2d 80 (1st Dept. 1951). Rather, employees of the defendant, acting *within* the scope of their employment and relying on the accuracy of their employer's computer, intentionally converted the luggage of the plaintiffs by removing it from plaintiff's room and delivering it to an aircraft bound for Saudi Arabia. The theft (by unknown parties) occurred after the conversion.

Plaintiff Mohinder Kaur Bhattal, in addition to asserting loss of valuables of the highest value, alleges extreme emotional distress. She claims (Answer to Interrogatory No. 20) that she

"was visibly upset and cried for long periods of time during the week of July 19, 1981 and periodically thereafter. When plaintiff Mohinder thinks of the loss of her jewels she still becomes visibly upset and subject to crying spells. The memory of her lost jewels is a recurring trauma."

All of us who have enjoyed the benefits of civilization have memories of lost jewels of one sort or another. Plaintiff Sukhminder Singh Bhattal alleges that he was so emotionally upset by the loss of his business effects and luggage that he had to cancel business appointments in New York and Chicago, and because the health certificates in the luggage were also lost. As a result, plaintiffs and their child were required to

be vaccinated again for yellow fever and smallpox.

However, under New York law, applicable here, absent proof of malicious intent on the part of the defendant, a party cannot recover damages for mental anguish, humiliation or emotional distress caused by conversion of a chattel. *Cauverien v. DeMetz*, 20 Misc.2d 144, 188 N.Y.S.2d 627 (Sup.Ct., N.Y.Co., 1959). There is no evidence to suggest that the defendant acted maliciously or willfully in converting the luggage of the plaintiffs. The employees of the defendant acted in good faith, in reliance upon the instructions of a computer. Although the propriety of placing such blind faith in a mere piece of unthinking machinery is questionable, it is clear that the conversion of the plaintiffs' luggage was not the result of malice. Therefore, damages for mental anguish or consequential damages arising from re-vaccination, etc., allegedly suffered as a result of the conversion are not recoverable. Absent malicious conduct, the proper measure of damages for conversion is the fair market value of the converted property at the time and place of the conversion, plus interest. *Citizens National Bank v. Osetek*, 353 F.Supp. 958 (S.D.N.Y.1973).

The Court finds no genuine issue as to any material fact concerning the liability of the defendant for the conversion of the property of the plaintiffs. Accordingly, on the Court's own motion and pursuant to Rule 56(d), F.R.Civ.P., partial summary judgment is granted in favor of the non-moving plaintiffs against defendant Hyatt Corporation. *Doe v. United States Civil Service Commission*, 483 F.Supp. 539, 571 (S.D.N.Y.1980).

The remaining issue, which is the amount of plaintiffs' damages, requires a plenary hearing at which the parties will be free to introduce evidence as to the nature of the converted property and its fair market value at the time and place of conversion.

A pre-hearing conference to set the time and place thereof shall be held before me on June 15, 1983 in Courtroom 705 at 9:30 A.M.

and must be attended by counsel for both parties.

So Ordered.